[S. F. No. 5327.   In Bank.—January 4, 1911.]

# JESSE D. HANNAH, Appellant, v. B. U. STEINMAN, Respondent.

RESCISSION OF CONTRACT—CONSENT GIVEN BY MISTAKE.—Under subdivision 1 of section 1689 of the Civil Code, a party to a contract may rescind the same if his consent thereto was given by mistake either of law or fact.

ID.—MISTAKE OF FACT OR LAW.—Under section 1577 of the Civil Code, unconscious ignorance of a fact material to the contract or belief in the present existence of a thing material to the contract constitutes a mistake of fact, and under section 1577, a misapprehension of the law by all parties, all supposing that they know and understand it, and all making substantially the same mistake as to the law, constitutes a mistake of law.

ID.—LEASE OF VACANT LOT—INTENTION TO ERECT WOODEN BUILDING—IGNORANCE OF ORDINANCE PROHIBITING.—Where a lease of an unimproved city lot was negotiated and executed for a term of three years, at a monthly rental of two hundred and fifty dollars, with the privilege of renewal for a further term of two years at a monthly rental of three hundred dollars, upon the assumption that a wooden building could lawfully be constructed upon the demised land, and that such was the use to which the lessee must put the land in order that it might be of any benefit to him, and was the main inducement of the contract, the mutual ignorance of each of the parties to the lease of the existence of an ordinance of the city, enacted two days prior to its execution, prohibiting the erection of wooden buildings upon territory including the demised land, is such a mistake, either of law or fact, as authorizes the lessee to rescind the lease.

ID.—MISTAKE MATERIAL TO CONTRACT.—Such mistake was not as to a purely collateral matter, but rather went to the essence of and was material to the contract of lease, within the meaning of section 1577 of the Civil Code, and was not caused by the neglect of any legal duty on the part of the lessee.

ID.—RESCISSION OF LEASE—CONDITIONAL OFFER OF RESTORATION BY LESSEE—REASONABLE COMPENSATION TO LESSOR.—An attempted rescission by the lessee, in which he offered to restore possession of the land, authorized the lessor to enter upon and hold the same, and offered to execute such release of the lease as the lessor might desire, and to do all acts necessary in order to fully restore to the lessor any and all things of value received by him as fully and completely as if the lease had not been made, was not rendered in-

valid by reason of the fact that the offer of restoration was made upon the express condition that the lessor restore "all moneys and things of value received as consideration for said lease," which would include all amounts received by him as rent. Such offer was in full accord with section 1691 of the Civil Code, and was broad enough to include the lessor's right to reasonable compensation for the use of the land for the time preceding the rescission.

ID.—DELAY IN RESCISSION—NEGOTIATIONS FOR MODIFICATION OF LEASE— IGNORANCE OF RIGHT TO RESCIND—ABSENCE OF INJURY TO LESSOR.— Where the lessee acquired full knowledge of the facts which entitled him to rescind two weeks after the lease was made, but did not ascertain that it could be rescinded for such a mistake until about seven months thereafter, when he was so advised by his attorney, and immediately served notice of rescission, his delay in taking such action cannot be held unreasonable, within the meaning of section 1691 of the Civil Code, when it appears that the interval was occupied by the lessee in fruitless negotiations to secure an extension of the term of the lease, so as to warrant the construction of a building in accord with the requirements of the ordinance, and that the delay in rescinding was not due to any uncertainty in his mind as to whether or not it might be profitable to him to retain the lease, and was without injury to the lessor.

ID.—PROMPT RESCISSION—KNOWLEDGE OF RIGHT TO RESCIND.—Under such circumstances, it cannot be held that the lessee became "aware of his right to rescind," as soon as he discovered the impossibility of erecting a wooden building on the demised premises, within the meaning of subdivision 1 of section 1691 of the Civil Code, requiring a party to rescind promptly on discovery of the facts entitling him to rescission, if "aware of his right to rescind."

ID.—WAIVER OF RIGHT OF RESCISSION—PAYMENT OF RENT UNDER PROTEST.—The fact that the lessee, after discovering that he could not erect a wooden building on the demised premises, and before he served notice of rescission, paid two months' rent as called for by the lease, under protest, did not constitute a waiver of the right of rescission.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco and from an order refusing a new trial. J. M. Seawell, Judge.

The facts are stated in the opinion of the court.

Aitken & Aitken, for Appellant.

Heller, Powers & Ehrman, for Respondent.

ANGELLOTTI, J.—Plaintiff appeals from a judgment denying him any relief and from an order denying his motion

for a new trial in an action brought by him to obtain a decree that a contract of lease has been rescinded.

Defendant is the owner of an unimproved lot of land in San Francisco, with a frontage of ninety feet on the northerly line of Geary Street between Larkin and Hyde streets. On July 7, 1906, a contract of lease was executed by the parties, whereby defendant let to plaintiff and plaintiff hired from defendant said lot for a term of three years commencing August 7, 1906, for the sum of nine thousand dollars, payable in monthly installments of two hundred and fifty dollars, and the privilege was thereby given to plaintiff to extend the lease for a further term of two years at a monthly rental of three hundred dollars. It was recited therein that as the lessee contemplated erecting buildings on the premises he would hold the owner free of any claim of lien on account thereof, that all buildings or other improvements placed thereon by plaintiff should be plaintiff's property at the termination of the lease, that he would pay all taxes thereon and that he should have ten days free of rent at the termination of the lease in which to remove them. Up to the fifth day of July, 1906, the ordinances of the city and county of San Francisco were such that a permit could be obtained for the construction of a wooden building on this property, but on July 5, 1906, an ordinance was enacted that rendered it unlawful to erect or construct wooden buildings within certain limits prescribed therein, which included this lot. Neither plaintiff nor defendant knew of this change in the laws of the city and county at the time of the execution of the lease, each supposing that he knew and understood the law relative to such matters and each apprehending the law to be that the erection of a temporary wooden building on said lot would be lawful. Plaintiff and defendant never met personally until long after the execution of the lease, all negotiations between them having been conducted through a firm of real estate brokers who acted purely as middlemen and who were not the agents or representatives of the defendant. The finding on this question of agency is fully sustained by the evidence. About two weeks after the execution of the lease, plaintiff, having already paid two hundred and fifty dollars rent, applied to the board of public works of the city and county for a permit to erect a wooden building on said property, and he then discovered

that the law relative to fire limits had been changed and that
no permit could be obtained.   There was no attempt to ques-
tion the positive evidence introduced by plaintiff to the effect
that without the right to erect a wooden building upon this
lot, the lease for three years only with the privilege of two
years more at the prescribed rental was absolutely without
value to a tenant, and that plaintiff never would have entered
into the contract had he supposed that he could not erect such
a building thereon.   It was impossible to use the lot to advan-
tage without a building, and the cost of such a building as
could be constructed in view of the building ordinances appli-
cable would be so great as to render the lease in question value-
less.   The evidence compels the conclusion that it was within
the contemplation of both parties that the lessee could use the
lot to advantage only by constructing a wooden building
thereon and that he was taking it for such use.   Upon learn-
ing that a wooden building could not be constructed plaintiff
so informed the real estate agents, said the lot was of no value
to him unless he was given a longer term and protested against
paying the rent for the second month.   He subsequently paid
rent for two additional months to Mr. Israel of the Union
Trust Company for defendant, protesting at each payment
against the same.   He was informed by Mr. Israel that de-
fendant was East but would shortly return and he allowed
the matter to remain in abeyance until defendant's return.
The evidence indicated that defendant was advised of plain-
tiff's dissatisfaction with the lease and that he (plaintiff) was
disposed not to go on with it.   Immediately upon his return
(January 26, 1907) negotiations were commenced between the
parties looking to a longer term, but they came to nothing.
In his written proposition of February 24, 1907, regarding the
terms of a new lease for twenty years, plaintiff asked de-
fendant, if not satisfied with the proposition, to consider re-
leasing him, saying that he had already paid dearly for his
experience.   As soon as it had developed that no satisfactory
arrangement could be made plaintiff consulted an attorney,
and was informed that he had a right to rescind the contract
of lease.   This was on March 1, 1907.   He had full knowledge
of the facts which entitled him to rescind two weeks after the
agreement was entered into, but did not know that an agree-
ment could be rescinded on account of such a mistake until

CLIX Cal.—10

so advised by his attorney. On March 5, 1907, he served a notice of rescission on defendant, specifying mistake and failure of consideration as the grounds, offering therein to restore possession of the land, authorizing defendant to enter upon and hold the same, offering to execute such release of the lease as defendant might desire and to do all acts necessary in order to fully restore to defendant any and all things of value received by him as fully and completely as if said lease had not been made, "on condition that you restore to me all moneys and things of value received as consideration for said lease." Defendant refused to agree to a rescission and this action was at once commenced.

The trial court found as facts "that the use of said real property described in said lease by the erection of a building or buildings which could be removed, was not the only valuable consideration for the obligation of plaintiff under said contract," and that plaintiff "did not use due diligence in rescinding said agreement." Both of these findings are attacked as not being sustained by the evidence. In its purported conclusions of law was one that plaintiff "did not rescind said contract promptly upon discovering the facts which entitled him to rescind the same and when he was aware of his right to rescind," and this, treated by plaintiff as a finding of fact, is also attacked as being unsupported by the evidence.

A party to a contract may rescind the same if his consent thereto was given by mistake either of law or fact. (Civ. Code, sec. 1689, subd. 1.) We deem it unimportant whether the alleged mistake in this case be held to be a mistake of fact or one of law. The mistake was the belief of both parties that the lot was not within the limits fixed by .ordinance wherein it was unlawful under the ordinances of the city and county of San Francisco to construct a wooden building—ignorance of the fact that an ordinance had just been adopted placing such lot within such limits. Unconscious ignorance of a fact material to the contract or belief in the present existence of a thing material to the contract constitutes a mistake of fact (Civ. Code, sec. 1577), and a misapprehension of the law by all parties, all supposing that they know and understand it, and all making substantially the same mistake as to the law, constitutes a mistake of law. (Civ. Code, sec. 1578.) Upon

the facts of this case there was a mutual mistake either of fact or of law. Was it such a mistake as warrants rescission? Consent is deemed to have been obtained through mistake "only when it would not have been given had such cause not existed." (Civ. Code, sec. 1568.) It cannot be doubted that plaintiff would not have consented to the lease but for this mistake. The principal question in this connection is whether it was "material to the contract" within the meaning of those words as used in our statute. That it was material in the sense that but for it plaintiff would not have considered for a moment the making of the contract we have seen, but that clearly is not enough. The same thing might be said as to mistaken expectations of both plaintiff and defendant as to plaintiff's ability to obtain tenants for the building he proposed to erect on the leased land, and, of course, a mistake in that regard would not furnish ground for rescission, although plaintiff never would have entered into the contract but for such mistaken belief. It is declared by Mr. Page in his work on Contracts that a mistake will not be operative to render a contract void, although in some cases it may render it voidable if it merely affects some "collateral" though highly material matter, constituting merely a matter of inducement, but that it must affect the execution and the essential elements of the contract (secs. 58 and 60), which elements are stated to be the parties, the subject-matter, the consideration, and the offer and acceptance. We may assume for the purposes of this decision that our legislature had some such idea as this in the use of the word "material" in this connection, but so assuming, we are, nevertheless, of the opinion that the mistake here was not as to a purely collateral matter, but rather went to the essence of the contract. The authorities recognize the difficulty in determining whether a mistake applies to an essential feature of the contract or to a purely collateral matter. (1 Page on Contracts, sec. 71.) It is thoroughly established that if the parties to a contract enter into it under the belief that the subject-matter or consideration is in existence, and in effect condition their contract thereon, and, as a matter of fact, it is not in existence, the mistake will enable a party to avoid the contract. We are, of course, not speaking of cases where the parties are aware that the existence of the subject-matter is doubtful and contract with reference thereto.

Thus an ordinary contract of sale of property supposed to be in existence, but which in fact no longer exists, may be avoided. In such a case it is plain that the mistake is material and goes to the very essence of the contract. The assumed fact of existence is the whole basis of the contract. The same rule must necessarily apply where a material part of the subject-matter as to which the parties supposed they were contracting is not in existence at the time the contract is entered into. An example of this is the case cited by Mr. Page in section 72 of his work, *Bedell* v. *Wilder,* 65 Vt. 406, [36 Am. St. Rep. 871, 26 Atl. 589], a lease of property to be used for manufacturing purposes where entered into under a mistake as to water-rights which were thought to be easements appertaining to the realty and without which it could not be used for such purposes. (See, also, *Blakeman* v. *Blakeman,* 39 Conn. 320; *Champlin* v. *Laytin,* 1 Edw. Ch. (N. Y.) 467.) So, also, a material mistake as to the identity of the subject-matter or consideration may go to the very essence of the contract. A leading case in this regard is that of *Kennedy* v. *Mail Co.,* 2 L. R. Q. B. 580, an action to rescind a contract of subscription for shares of the defendant on the ground of mistake. The prospectus of the defendant company stated that the shares were issued to enable the company to perform a contract for mail service entered into with the government of New Zealand. As a matter of fact the purported contract was invalid, but all parties believed it to be valid and plaintiff had subscribed because of that mistaken belief. The value of the shares would have been greater had the contract been valid, but they were, nevertheless, of considerable value, the court in fact saying that the difference in value was not greater than "might very well be accounted for by the change of times, quite independently of the dispute about the contract." While relief was denied in that case, the court expressly recognized that if the invalidity of the mail contract really made the shares plaintiff obtained "different things in substance from those which he applied for" he would be entitled to rescission. The court said that "the difficulty in every case is to determine whether the mistake or misapprehension is as to the substance of the whole consideration, going, as it were, to the root of the matter, or only to some point, even though a material point, an error as to which does not

affect the substance of the whole transaction." It cannot be doubted that if the value of the shares had been entirely dependent on the validity of the mail contract the court would have held that the mistake was as to the substance of the whole transaction. The principles enunciated in this decision were applied in *Sherwood* v. *Walker,* 66 Mich. 568, [11 Am. St. Rep. 531, 33 N. W. 919], where a mistake as to whether a cow was barren and would not breed was held to avoid a contract of sale thereof, the record being taken as showing that both parties supposed the cow to be barren and dealt with each other upon that theory, in consequence thereof fixing the price ("five and a half cents per pound") according to the value of the animal for beef while, if a breeder, she was worth at least seven hundred and fifty dollars. The court held that the mistake went to the whole substance of the agreement; that the parties would not have made the contract except upon the understanding that the cow was incapable of breeding and of no use as a cow; that the cow was not in fact the animal or kind of animal the defendant intended to sell or the plaintiff intended to buy; that the mistake went to the very nature of the thing and affected the substance of the whole transaction, and that there was no contract to sell or of sale of the cow as she actually was. Such a case is, of course, very different from one where there is no mutual understanding as to a supposed fact relating to the subject-matter of the contract known by both parties to be the sole basis of the proposed contract, and upon the assumption of which they actually conduct their negotiations. The case before us is very much stronger in favor of plaintiff than either of the cases just discussed. The evidence demonstrates that the parties negotiated and executed the lease upon the assumption that a wooden building could lawfully be constructed upon the demised land, and that such was the use to which the lessee must put the land and was the main inducement of the contract. Without the right to construct such a building, it could be of no substantial value to any one holding a lease for only five years who was required to pay any substantial rent. While there was no mistake as to the identity of the land itself, without that right and viewed with reference to a lease for only five years the land was a substantially different thing from the land supposed to be contracted for. It is very an-

alogous to a case of land bought and sold upon the mistaken supposition that an absolutely necessary way of ingress and egress is appurtenant to the land and passes by the conveyance, where, in fact, there is no such way. Without the right to construct a wooden building the tenant, so far as all practical considerations are concerned, was obtaining nothing. If an effectual prohibition against a wooden building on this lot had been imposed by the terms of a prior conveyance, and this lease had been given and received in ignorance of the existence thereof, it would probably not be questioned that the mistake would be of such a nature as to enable the lessee to rescind, the prohibition amounting to a practical and material impairment of the estate contemplated by the parties. Here we have practically the same result because of an ordinance of the city of which the parties were ignorant. We cannot believe that the equitable rules relative to mistake should be so narrowly construed as to require us to hold that this mistake did not go to the very essence of the contract between these parties. We have examined the cases cited by learned counsel for defendant on this proposition, but find nothing therein compelling a different conclusion from that at which we have arrived. It would unnecessarily prolong this opinion to discuss these cases. It is proper, however, to note that the quotation from 9 Cyc. 395, to the effect that where one buys land in the expectation of procuring a consent which is required for building on it, and fails to obtain such consent, his mistake will have no effect on the agreement, is not opposed to our conclusion. The connection in which this is said shows that the expectation there referred to is one not so regarded by the parties as to constitute an essential feature of the contract of sale, but as a mere expectation of the vendee as to what he may be able to obtain from another party in the future. In the case cited in support thereof (*Adams* v. *Weare*, 1 Bro. Ch. 567, 28 Eng. Reprint 1301) it appeared that it was understood between the parties that the vendee assumed the risk of being able to get the consent and that the sale was not conditioned upon his obtaining it. The trial court in this case concluded, as we have, that the consent of plaintiff to said contract was given and obtained by and through a mistake and would not have been given had not such mistake existed, and its denial of relief to plaintiff was based purely on the

ground of want of diligence on his part in rescinding the agreement.

Section 1577 of the Civil Code defining "mistake" declares that it is a mistake "not caused by the neglect of a legal duty on the part of the person making the mistake." We find nothing in the record warranting a conclusion that the mistake was caused by the neglect of any legal duty on the part of plaintiff.

Section 1691 of the Civil Code provides that, except where effected by consent, rescission can be accomplished only by the use, on the part of the party rescinding, of reasonable diligence to comply with the following rules:—

"1. He must rescind promptly, upon discovering the facts which entitle him to rescind, if he is free from duress, menace, undue influence, or disability, and is aware of his right to rescind; and,

"2. He must restore to the other party everything of value which he has received from him under the contract; or must offer to restore the same, upon condition that such party shall do likewise, unless the latter is unable or positively refuses to do so."

We see no force in the claim that the attempted rescission was incomplete for want of a sufficient offer of restoration of all that plaintiff had received under the contract. The offer was in full accord with the above-quoted provision of the Civil Code. The point of learned counsel for defendant in this connection appears to be that it was invalid because made upon the express condition that defendant restore "all moneys and things of value received as consideration for said lease," which would include all amounts received by him as rent stipulated thereby. Such, however, is the provision of our code relative to the offer, that condition being expressly provided for therein. In the event of rescission, plaintiff was entitled to have restored to him all sums paid by him under the contract. This does not mean that defendant was not entitled to have reasonable compensation for the use of his land for the time preceding the rescission, if circumstances were such as to make it just that he should have such compensation. The offer of plaintiff was broad enough to include such compensation. In addition to offering possession of the land, etc., he offered "to do and perform all acts and things which may be

necessary or proper in order to fully restore to you any and all things of value received by me from you as fully and completely as if said lease had never been made."

The decision of the learned trial judge against plaintiff is based upon his conclusion that he had not used reasonable diligence to comply with the requirement of subdivision 1 of section 1691 of the Civil Code to rescind promptly on discovery of the facts entitling him to rescission, if "aware of his right to rescind." Is there sufficient support in the evidence for this conclusion? There is not a vestige of evidence to indicate that plaintiff, after discovery of the facts, delayed action looking to a repudiation of the lease by reason of any desire to hold the same for a time, with the possibility of profiting thereby. It was demonstrated by the evidence that from the moment of discovery of the facts it was recognized by plaintiff that his lease was absolutely valueless, as in fact it was, and contended that he should, in justice, be released from his obligation to pay rents thereunder, unless the contract was modified in such a way as to give him a term sufficiently long to warrant the construction by him of a building in accord with the requirements of the ordinance. He at once made known his position in regard to the matter to the agents who had effected the lease and who collected the rents for the second month, and maintained that position until it was finally apparent that a longer term upon a satisfactory basis could not be agreed upon. The delay in ascertaining that fact was due principally to the absence of defendant from the state, and the evidence is such as to practically compel the conclusion that plaintiff acquiesced as long as he did solely because he hoped that some satisfactory solution might be agreed upon by himself and defendant, and that he had reasonable grounds for such hope. The facts of the case were such that defendant could not but know as soon as he learned of the ordinance that the lease already executed was practically worthless to plaintiff. It is absolutely clear too, that plaintiff did not have any idea that the law gave him the right to rescind the contract of lease for such a mistake as this until upon the conclusion of his efforts to adjust the matter with the defendant in some way, he, on March 1, 1907, consulted a lawyer. His letter of February 4, 1907, to defendant, in which he asked to be released if defendant

would not accept his proposition for a new lease, showed that he was still absolutely ignorant of any such right. It cannot be disputed that he proceeded with all due diligence upon learning that such a remedy existed, but it is urged, in accord with the views entertained by the learned judge of the trial court, that he should earlier have made himself acquainted with his legal rights in the matter, upon the theory that means of knowledge are equivalent to knowledge. The words "and is aware of his right to rescind" in subdivision 1 of section 1691 of the Civil Code necessarily mean something more than that a party could have ascertained that the remedy by rescission existed by investigating as to what remedies the law afforded. Meaning no more than this they would be entirely superfluous. Discovery of the facts entitling him to rescind would alone suffice. The statute provides that in addition "to discovering the facts" he must be "aware of his right to rescind." These words imply in regard to the right to a remedy by rescission at least as much as the word "discovering" implies in regard to the facts entitling him to rescind, viz., that he should actually have knowledge of circumstances sufficient to put him on an inquiry which if followed would have developed the truth (see *Lady Washington C. Co.* v. *Wood,* 113 Cal. 487, [45 Pac. 809]); or as said in *Guarantee Co.* v. *Mechanics etc. Co.,* 183 U. S. 420, [22 Sup. Ct. 131, 46 L. Ed. 253], not as meaning "becoming satisfied," but rather "having reason to believe" or "to be put on one's guard in respect thereto." Mere knowledge of the facts that entitle one to rescind is not enough to necessarily put one on inquiry as to the possible remedies afforded by law. There must at least be knowledge of such facts as would reasonably put the party upon such inquiry. This knowledge may perhaps be afforded by the very facts that entitle him to rescind, as, for instance, in a case where those facts show a deliberate intention on the part of the other party to defraud and practically demonstrate that the only relief the injured party may obtain is such as he can have by diligently pursuing such remedy as the law may afford. As to this, however, we express no opinion. But there was nothing of this kind in the case at bar—no circumstances calling for the conclusion that a resort to law must be had. There was simply a mistake on the part of both parties honestly made, and it does not appear

to us that there was anything in the circumstances to sustain the conclusion that the plaintiff was required at once or at any time prior to the termination of the negotiations between himself and defendant, to consult a lawyer to ascertain his legal rights. If there were a vestige of evidence to indicate that plaintiff delayed proceeding in this matter because of any uncertainty in his own mind as to whether or not it might be profitable to him to retain this lease, a very different case would be presented. It is proper also to say that there is no evidence whatever to indicate that defendant may have been injured by the delay. He must have known practically from the outset that, in view of the ordinance of which each was ignorant at the time of the execution of the contract, plaintiff's lease was valueless, and that plaintiff was not willing to retain it or keep the property unless a new arrangement could be made. There was nothing to indicate that he had any opportunity to let the property to any other person except his statement referred to in the letter from plaintiff of February 4, 1907, as being made a few days before, to the effect that "other parties were anxious to negotiate for this property," and in this very letter plaintiff asked him to consider releasing him.

We do not think that the complaint of plaintiff affirmatively showed such laches on his part in rescinding as to render it defective. The payment of rent under the circumstances shown did not constitute a waiver of the right of rescission.

The judgment and order denying a new trial are reversed.

Shaw, J., Lorigan, J., Henshaw J., and Melvin, J., concurred.

Rehearing denied.