[Civ. No. 3936. Second Appellate District, Division Two.—April 25, 1924.]

AARON TETENMAN, Plaintiff, v. B. EPSTEIN et al., Appellants; MITCHELL KAUFFMAN et al., Respondents.

[1] MORTGAGES—CONSTRUCTION OF DEED—INTENT—FINDINGS—JUDGMENT.—In an action involving title to real property, where the court expressly finds that interveners executed and delivered to defendants a mortgage covering the property in question as security for moneys loaned interveners, that thereafter and after the loan was past due defendants proposed that interveners execute a grant deed conveying the property to defendants in full satisfaction of the indebtedness, which conveyance was executed, and there is no finding that it was the intent of either of the parties that such grant deed was given as security for the payment of any obligation or the performance of any act, it is not within the power of the trial court to make such grant deed over into a mortgage.

[2] ID.—CONVEYANCE OF EQUITY OF REDEMPTION—EQUITY—FINDINGS—JUDGMENT.—In such a case, when the facts warrant, a deed

---

1. See 17 Cal. Jur. 782; 19 R. C. L. 264.
2. See 9 Cal. Jur. 378; 4 R. C. L. 497.

conveying the equity of redemption, so called, will be set aside, leaving the mortgagee still possessed of his mortgage security and the court may decree that the debt represented thereby be satisfied in the usual manner from the mortgaged premises; but, where the findings do not warrant, the trial court is not authorized to decree that the deed conveying the equity of redemption is a mortgage.

[3] ID.—RESCISSION — REFORMATION — ESSENTIAL ELEMENTS—INADEQUACY OF CONSIDERATION—EQUITY.—Equity will freely grant rescission where there has been a mistake of both parties as to a collateral matter which was vital to the contract and formed an essential element thereof; but, in contrast with rescission, reformation of a contract presupposes that it does not express the true intent of the parties, which intent being other than that stated in the agreement is substituted by apt language, provided by the decree of the court; and even though the distinction between actions for reformation and for the rescission of an instrument were to be disregarded (and this is a fundamental difference and not one merely of form), in the absence of fraud or oppression, the mere inadequacy of consideration cannot alone serve as a basis for granting relief to a mortgagor who has executed a grant deed conveying to the mortgagee the equity of redemption in the mortgaged property.

[4] ID.—IGNORANCE OF LEGAL RIGHTS—BELIEF—FRAUD—UNDUE INFLUENCE—EVIDENCE.—The facts that the mortgagors were not aware of their legal rights, and, particularly, of the existence of an equity of redemption, and that they believed that the mortgagee could do what he pleased with the mortgaged property, did not show that the mortgagee or anyone in his behalf defrauded the mortgagors, or exercised any undue influence, or compulsion, to force them to sign the deed conveying to the mortgagee their equity of redemption.

[5] ID.—VALUE OF PROPERTY—IGNORANCE OF FACTS—MISTAKE.—Mere ignorance or erroneous belief as to the true value of property by one who sells it to another, where the sale is for a sum considerably less than its value, does not amount to a mistake of fact, as defined in section 1577 of the Civil Code.

[6] ID.—REFORMATION OF DEED—INTENT—EVIDENCE.—Clear evidence, free from doubt, is necessary to establish that the real in-

---

3. Canceling or correcting writings because of mistake, note, 117 Am. St. Rep. 227. See, also, 4 Cal. Jur. 783, 786; 4 R. C. L. 501, 506; 23 R. C. L. 320.

4. See 4 Cal. Jur. 782; 4 R. C. L. 506; 23 R. C. L. 328.

5. See 6 Cal. Jur. 81.

6. See 17 Cal. Jur. 756; 19 R. C. L. 263.

tention of the parties was to execute a mortgage, in order to justify a decree to that effect where the deed is absolute in form.

[7] ID.—INEQUALITY OF POSITIONS—OPPRESSION—PRESUMPTION.—In an action in effect to reform a grant deed by which the mortgagors conveyed to the mortgagee their equity of redemption, so called, in the mortgaged property, until it appears that the execution of the grant deed was traceable to the inequality of the positions of the parties, no basis exists for the presumption that the mortgagee used some form of oppression to obtain it.

[8] ID.—GAIN BY MISTAKE—TRUSTS—CONSTRUCTION OF CODE SECTIONS. Section 2224 of the Civil Code, which provides that one who gains a thing by mistake is an involuntary trustee of the thing gained for the benefit of the person who otherwise would have had it, can have no application to the facts of a case where the mortgagors have executed a grant deed conveying to the mortgagee their equity of redemption in the mortgaged property, except it be first established that the deed was made as the result of mistake, as provided in sections 1517 and 1518 of the Civil Code.

---

(1) 27 Cyc., pp. 1007, 1030.  (2) 27 Cyc., p. 1007.  (3) 21 C. J., p. 87, sec. 62; 34 Cyc., pp. 907, 915.  (4) 27 Cyc., p. 1385.  (5) 35 Cyc., p. 131.  (6) 27 Cyc., p. 1025.  (7) 27 Cyc., p. 1385.  (8) 27 Cyc., p. 1385 (1926 Anno.).

APPEAL from a judgment of the Superior Court of Orange County. R. Y. Williams, Judge. Reversed.

The facts are stated in the opinion of the court.

E. F. Gerecht and C. W. Hall for Appellants.

Goodwin & Morgrage for Respondents.

CRAIG, J.—This is an appeal from a judgment in favor of the interveners, against the defendants decreeing that interveners were the owners and entitled to possession of certain lots in Orange County, and that a deed thereof, executed by interveners, constituted a mortgage to secure payment to Epstein of a promissory note and taxes, aggregating $461.17.

Plaintiff instituted an action praying specific performance of a contract in the form of an option given by Epstein to plaintiff upon the property in suit on January 5, 1921. Defendant Epstein answered, denying the allegations of the complaint, and alleging that his wife was not a party to the

option, and that she refused to sign a deed of conveyance, and that plaintiff had obtained such option by means of the concealment of material facts regarding the value of the property. Thereupon the Kauffmans intervened, claiming ownership of the same property, which they alleged consisted of four lots, numbered 15, 16, 17 and 18, in block 802, of the Vista del Mar Tract.

Upon the trial the interveners, under the direction of the court, filed an amended complaint in intervention to conform to the proof, and therein alleged among other facts, that Epstein had paid taxes amounting to $162; that the reasonable market value of the lots on November 22, 1920, was two thousand dollars, but that neither of the parties knew at that time of their increased value, and that this increase was caused by the discovery of oil in the immediate vicinity; that interveners did not learn of such discovery or of the advancement in value until just before the commencement of this suit. Ownership in the interveners is also alleged, with the prayer that they be adjudged the owners, and that the deed executed by them to Epstein be declared a mortgage to secure the payment of principal and interest due on the loan, and taxes paid by Epstein.

The trial court rendered judgment that the plaintiff take nothing; that the deed executed by interveners conveying the four lots mentioned be declared a mortgage and a lien upon all of said lots to secure the payment to B. Epstein of the sum of $461.17, representing the principal and interest on the note, and the taxes.

The principal contention of appellants is that neither the allegations of interveners' amended complaint, nor the findings, contain sufficient facts to legally justify the judgment rendered. In so far as the findings affect the controversy between the Epsteins and the Kauffmans, they recite that all of the allegations contained in paragraphs numbered 1 to 4 inclusive of interveners' amended complaint are true, which amounts to a finding affirmatively upon each fact so alleged. The essential facts so found are that the defendant B. Epstein loaned to interveners $250 upon the promissory note of the latter, secured by mortgage on the four lots, and payable seven months thereafter; that defendant demanded payment when the note was overdue; that interveners were poor and without funds, and unable to pay said

amount, and were ignorant and unfamiliar with the law
relative to foreclosure and the right of redemption; that
interveners were foreigners, unable to speak English per-
fectly, and that they thought that by virtue of having
executed said mortgage they had placed themselves in Ep-
stein's power; that while in such state of mind Epstein pro-
posed to them that they give him a grant deed to all the
lots in full satisfaction of their indebtedness, and that be-
lieving that the value of the lots did not exceed the amount
of the note, on November 22, 1920, they executed and de-
livered to Epstein a grant deed to the entire property, which
Epstein accepted believing that the value of the lots did not
exceed the amount due him; that the reasonable market
value of said property on November 22, 1920, was at least
two thousand dollars, but that none of the parties at such
time knew this fact; that the increased value was due to
the discovery of oil in the vicinity, but that interveners were
not aware of such discovery until just prior to the com-
mencement of this action; and that Epstein did not execute
or file a satisfaction of said mortgage until January 10,
1921, at which time said lots were of the value of at least
three thousand dollars.

Based upon these facts alone, we are unable to perceive
any theory upon which the judgment can be upheld.  [1]
The trial court adjudged that the deed was a mortgage, and
yet there is no finding that it was the intent of either of
the parties that the instrument was given as security for
the payment of any obligation or the performance of any
act. On the contrary, it was expressly found that Epstein
proposed that interveners execute a deed to all four lots,
and that they "executed and delivered to said Epstein
a grant deed conveying said four lots." Upon such a find-
ing, the deed not being given as security, but as a convey-
ance of the equity of redemption, it was obviously not
within the power of a trial court to make over into a mort-
gage the instrument intended by the parties who executed
it to be a deed. (*Hochstein* v. *Berghauser,* 123 Cal. 681
[56 Pac. 547].)  [2] When the facts warrant, a deed
conveying the equity of redemption, so called, will be set
aside, leaving the mortgagee still possessed of his mortgage
security and the court may decree that the debt represented
thereby be satisfied in the usual manner from the mortgaged

premises. But the court in the instant case has not set the deed aside and revived a mortgage of February 4, 1919, the foreclosure of which was threatened before the deed was executed, but has declared that the deed itself is a mortgage, which, as we have indicated, the findings do not warrant.

In effect the intervention is for reformation. The decree rendered grants that relief. The complaint in intervention is not to rescind the deed of November 22, 1920. Had such rescission been sought and decreed, the deed might possibly have been canceled and the original mortgage would then remain as a lien upon the property in question. [3] Equity will freely grant rescission where there has been a mistake of both parties as to a collateral matter which was vital to the contract and formed an essential element thereof. (*Johnson* v. *Withers,* 9 Cal. App. 52 [98 Pac. 42]; *Hannah* v. *Steinman,* 159 Cal. 142 [112 Pac. 1094].) But in contrast with rescission, reformation of a contract presupposes that it does not express the true intent of the parties, which intent being other than that stated in the agreement is substituted by apt language, provided by the decree of court. Even though the distinction between actions for reformation and for the rescission of an instrument were to be disregarded (and this is a fundamental difference and not one merely of form), still, under the authority of *De Martin* v. *Phelan,* 115 Cal. 538 [56 Am. St. Rep. 115, 47 Pac. 356], in the absence of fraud or oppression the mere inadequacy of consideration could not alone serve as a basis for granting the intervener relief.

From the record before us it is impossible to ascertain upon what legal theory the judgment was rendered. Some facts are contained in the findings which might be regarded as elements proper for consideration in the granting of relief where the deed had been obtained by fraud, or by mutual mistake, or under coercion; yet the facts fall far short of establishing constructive fraud, which is negatived by the ignorance of all parties as to valuations at the time the deed was made, and we do not understand the respondents to rely upon this ground. [4] It is true that the court finds the Kauffmans were not aware of their legal rights, and, particularly, of the existence of an equity of redemption, and that they believed that Epstein could do what he pleased with their property; but this is quite in-

sufficient as a finding that Epstein or anyone in his behalf defrauded them, or exercised any undue influence, or compulsion, to force them to sign the deed.

[5]   In connection with the possible ground of mistake, which seems to be principally relied upon by respondents, the only material fact concerning which that claim could be asserted is that the parties believed the lots in question to be of a value far less than their actual value at the time the transaction was consummated.   The findings of the trial court which we have mentioned do not permit consideration of the claim that there was any mistake as to the contents or legal effect of the instrument itself.   All of the parties knew that it was a deed and not a mortgage. It appears that in the beginning Epstein loaned the interveners $250, and that after they had failed to pay taxes for some time, the property was about to be sold on that account, and he paid these items.   The whole amount due at the time of the trial was found to be $461.17, and Epstein and the interveners at the date of the deed believed the lots to be worth about one hundred dollars, whereas they were in fact worth five hundred dollars each.   The court found that the change in values was the result of the discovery of oil in the vicinity of the premises.   Respondent cites section 1577 of the Civil Code, to the effect that mistake may consist of "belief in the existence of a thing material to the contract which does not exist," etc.; also section 2224, Civil Code, which provides that one who gains a thing by mistake is an involuntary trustee of the thing gained for the benefit of the person who would have had it.   If the mere ignorance as to the true value of property by one who sells it, where the sale is for a sum considerably less than its value, were a ground to set aside a deed, no transaction would be final until the validity thereof had been determined by a suit to quiet title.   We are cited to no case holding that such ignorance or erroneous belief as to the mere value of property amounts to mistake of fact as defined in section 1577, Civil Code.   In *Hannah* v. *Steinman, supra,* our supreme court, construing certain sections of the Civil Code, including section 1577, said: "It cannot be doubted that plaintiff would not have consented to the lease but for this mistake.   The principal question in this connection is whether it was 'material to the contract,'

within the meaning of those words as used in our statute. That it was material in the sense that but for it plaintiff would not have considered for a moment the making of the contract we have seen, but that clearly is not enough. The same thing might be said as to mistaken expectations of both plaintiff and defendant, as to plaintiff's ability to obtain tenants for the building he proposed to erect on the leased land, and, of course, a mistake in that regard would not furnish ground for rescission, although plaintiff never would have entered into the contract but for such mistaken belief.''

We have said that a contract may be rescinded where there has been a mutual mistake as to some collateral fact the existence of which constitutes the essence of the agreement. For example, in the case last mentioned, the mutual ignorance of the parties of the fact that the lot leased by the plaintiff had just been placed within the fire limits so that wooden buildings could not be erected thereon was held to be a mutual mistake of such character as to justify rescission of a lease contract where the parties understood that the lot was to be used for the erection of wooden buildings. In the instant case the existence or nonexistence of oil was not considered by the parties at any time. It cannot be said, nor was it found, that they, under the mistaken belief that oil did not exist in the vicinity of these lots, made this contract, and that such belief served as an inducement, much less constituted an element thereof. The most that can be said is that they gave no consideration or thought to the possibility of oil being located near the premises.

[6] The general rule is that clear evidence, free from doubt, is necessary to establish that the real intention of the parties was to execute a mortgage, in order to justify a decree to that effect where the deed is absolute in form. (*Henley* v. *Hotaling*, 41 Cal. 22, 26; *Mahoney* v. *Bostwick,* 96 Cal. 53, 58 [31 Am. St. Rep. 175, 30 Pac. 1020]; *Holmes* v. *Warren,* 145 Cal. 457 [78 Pac. 954].)

[7] The respondent insists that a different rule prevails where a mortgagor has deeded his equity of redemption to the mortgagee from that applied to other transactions. Without doubt this is true where the theory of the common-law mortgage obtains. There is no question that the right

to redeem is one generally especially protected by court of equity. This is upon the theory that the mortgagee having received a common-law mortgage occupies a position superior to that of the mortgagor so that the parties cannot be said to have dealt with one another upon a basis of equality, hence for the mortgagee to retain the benefit of a deed from the mortgagor of the equity of redemption it must be shown that no undue influence, no fraud, and no compulsion operated to cause the mortgagor to execute the instrument of conveyance. In all such cases the advantage allowed the mortgagor in court, which in some instances has been held to amount to a presumption against the mortgagee, springs from the fact that the mortgagee has the mortgagor in his power through having obtained control of the mortgaged premises. The opinion in *De Martin* v. *Phelan, supra,* elucidates the fundamental principle involved in this phase of the discussion, and establishes for this state a different rule from that prevailing in some other jurisdictions, because of the fact that here the mortgagee secures only a lien upon the mortgaged premises, and does not receive title or possession thereof. Until it appears that the execution of the deed was traceable to the inequality of the positions of the parties, no basis exists for the presumption that the mortgagee used some form of oppression to obtain it. In the case at bar, as we have shown, the findings negative the idea that the deed was executed as a result of fraud; they also are inconsistent with the conclusion that coercion or oppression caused the interveners to make an absolute conveyance. It is expressly found that the parties all believed the property to be worth $100 per lot, or a total of $400. Had this been true, Epstein would have received less than his debt. It is found that the Kauffmans did not learn that the lots were more valuable than they had supposed until just before the bringing of this suit. The conclusion is unavoidable from these findings that when the deed was executed the interveners were satisfied to secure the cancellation of their debt in that way. Such being the facts the underlying reason for the rule favoring the mortgagor's right to redeem has no application if the mortgagor contracted freely; no substantial argument

66 Cal. App.—48

is apparent for limiting his power to contract and relieve himself of a debt through the transfer of a property right.

But aside from these considerations it will be noted that the actions cited by respondent, and other cases in which courts of equity have shown a willingness to set aside deeds made by mortgagors conveying their equities of redemption to mortgagees have been suits to rescind or to redeem; proceedings in which the mortgagor, though tardy, has either come forward and tendered the amount necessary for redemption, or has sought rescission on the ground of fraud or undue influence or advantage taken by the mortgagee over the mortgagor.

[8] Of course, section 2224 of the Civil Code can have no application to the facts of this case, except it be first established that the deed was made as a result of mistake, as provided in sections 1517 and 1518 of the Civil Code.

The judgment is reversed.

Finlayson, P. J., and Works, J., concurred.