Jack GARTNER, Appellant,

v.

Robert E. EIKILL, et al., Respondents.

No. 81–461.

Supreme Court of Minnesota.

May 21, 1982.

Bruess, Bye, Boyd, Andersen & Sullivan and Leo M. McDonnell, Duluth, for appellant.

Johnson, Fredin, Killen, Thibodeau & Seiler and Donald C. Erickson, Duluth, for respondents.

AMDAHL, Chief Justice.

This is an appeal from a judgment entered in favor of respondents Robert Eikill and John Schilling following a trial to the court, sitting without a jury, in the District Court of St. Louis County, Sixth Judicial District. The action is an equitable action brought by appellant Jack Gartner for the rescission, due to mutual mistake, of a contract for the conveyance of real property.

The land in question in this case was part of a larger parcel once owned by the J. C. Campbell Co. In 1970, the Campbell Co. and Northwestern Bell Telephone Co. applied to the City of Duluth to have the property rezoned from suburban (S) to manufacturing (M–1) to enable Northwestern Bell to build a distribution center on the property. The City Council granted the rezoning on the condition that only one building could be constructed on the rezoned property. The restrictions were shown on zoning maps attached to the Duluth City Code. The Campbell Co. sold part of the property to Northwestern Bell, who built the distribution center. In October of 1976, the Campbell Co. sold the remaining part of the property to respondents.

In February of 1978, respondents listed the property for sale through the Allison-General Realty Co. The listing agreement stated that the property was zoned M–1. Allison-General then placed advertisements in the Duluth newspapers describing the property as commercial property. Appellant contacted Allison-General and expressed his interest in purchasing the prop-

erty for investment or speculation. When he asked Allison-General's agent how the property was zoned, the agent responded that it was zoned M–1, industrial, which was commercial, or "better than commercial." Appellant did not ask specifically whether the property was available for development, and respondents' agent made no such representations.

On March 11, 1978, a few days after appellant inspected the property, the parties signed a standard form purchase agreement containing a provision that stated "[s]ubject to performance of the buyer, the seller agrees to execute and deliver a Warranty Deed * * * conveying marketable title to said premises subject only to the following exceptions: (a) Building and zoning laws, ordinances, State and Federal regulations * * *." Appellant admitted that he did not read the entire agreement. On April 10 appellant received a title examination that did not mention the restrictions specifically, but stated that the title was subject to "building and zoning laws, platting and subdivision regulations, ordinances, and municipal, state and federal regulations and local housing codes." He purchased the property on April 13, 1978, for $40,000. Neither appellant nor respondents were aware of the building restrictions at the time of the sale. Appellant did not make any inquiries on his own regarding zoning or building requirements, although he had purchased real estate before and was aware that zoning records were kept at the City Hall.

When appellant purchased the property in March of 1978, it could not have been used for any commercial or industrial purpose, despite its classification of M–1, because under the 1970 restriction only one building could be built on the larger parcel. After Northwestern Bell erected its building, no additional structure could be built on the property that appellant now owns. Although the property is now zoned suburban, appellant nevertheless may not build on it because residential building is permitted only on parcels of at least 5 acres, and appellant's parcel contains only about 4.6 acres. The Secretary of the City Plan-

ning Commission testified that "[t]here might be some agricultural-type uses, open-space uses" for the property. The property was valued at between $15,000 and $25,000 as of February 1981.

Appellant learned of the restriction in the fall of 1979, when local newspapers and radio stations reported news of a building moratorium, which was in effect from 1977 through 1979, and plans for rezoning. When he contacted the Secretary of the City Planning Commission, he discovered not only the restrictions but that the property had been rezoned to "S", suburban. He then authorized his attorney to send respondents a letter demanding cancellation of the sale. When respondents refused to rescind the transaction, appellant brought this action.

Appellant contends that the trial court erred in holding that "[t]here was no mistake as plaintiff purchased M–1 zoned property and defendants sold M–1 zoned property, and the zoning ordinance reflected it as M–1 zoned property." The general rule is that a court may order an agreement rescinded if both parties were mistaken with respect to facts material to the agreement. *See, e.g., Brecht v. Schramm*, 266 N.W.2d 514 (Minn.1978); Restatement (Second) of Contracts § 152 (1979). Respondents argue, however, that because appellant signed the purchase agreement, which contained a reference to building and zoning ordinances, he is bound by it and may not rescind it on the ground that he was unaware of the building restriction.

In the absence of fraud or misrepresentation, a person who signs a contract may not avoid it on the ground that he did not read it or thought its terms to be different. *See, e.g., N&D Fashions, Inc. v. DHJ Industries, Inc.*, 548 F.2d 722 (8th Cir. 1976); *Greer v. Kooiker*, 312 Minn. 499, 253 N.W.2d 133 (1977). In this case, however, appellant was not mistaken as to the contents of the purchase agreement; he and respondents both were mistaken with respect to the possible uses of the land. This is essentially a mistake of value. Although in many

cases the value of the thing conveyed has been held to be a risk assumed by the buyer, in some situations rescission is possible. Corbin states:

There are many cases in which one or both of the parties did not consciously assume the risk as to one or more of the subsidiary factors. One or both may assent to the contract on the assumption that this factor is definitely established and that there is no risk. If this assumption is mistaken, the fact that it is material only because it affects market value does not prevent the contract from being voidable by the party who is harmed by the mistake.

3 A. Corbin, *Corbin on Contracts* § 605 (rev. ed. 1960). The classic example of this situation is the well-known case of *Sherwood v. Walker*, 66 Mich. 568, 33 N.W. 919 (1887). In that case, which involved the sale of a cow that both parties mistakenly believed incapable of breeding, the court commented that:

The parties would not have made the contract of sale except upon the understanding and belief that she was incapable of breeding, and of no use as a cow. It is true she is now the identical animal that they thought her to be when the contract was made; there is no mistake as to the identity of the creature. Yet the mistake was not of the mere quality of the animal, but went to the very nature of the thing. * * * The mistake affected the character of the animal for all time, and for her present and ultimate use. She was not in fact the animal, or the kind of animal, the defendants intended to sell or the plaintiff to buy. She was not a barren cow, and, if this fact had been known, there would have been no contract.

*Id.* at 577–78, 33 N.W. at 923. The mistake in this case is not that appellant erroneously believed the property to be worth $40,-000, but that all parties assumed the property conveyed to be property that could be developed. The mistake, as in *Sherwood*, was not of the *monetary* value of the land, but "went to the very nature" of the property.

In *Sherwood*, neither party had any way of discovering whether the cow was in fact barren. Respondents argue in this case that appellant could have gone to City Hall and inquired about the zoning and that because he did not do so, he is not entitled to rescind the transaction. The failure of a party to investigate, however, will not always preclude rescission. *See* Restatement, Contracts § 508. In *Lindquist v. Gibbs,* 122 Minn. 205, 142 N.W. 156 (1913), and *Thwing v. Hall & Ducey Lumber Co.,* 40 Minn. 184, 41 N.W. 815 (1889), for example, this court ordered rescission of contracts for the sale of land under circumstances in which the buyer could have discovered the mistake. Here, appellant does not appear to have been negligent at all. He inquired regarding the zoning of the property and was assured that it was zoned M–1 and was suitable for commercial use. His reliance on respondents' agent's statements was reasonable; we do not believe that he had any duty to inquire further.

Respondents also argue that the mistake was one of law rather than fact, and that in any event, appellant was held to at least constructive knowledge of the ordinance that created the restriction. In *Minneapolis Brewing Co. v. Village of Bagley*, 142 Minn. 16, 170 N.W. 704 (1919), this court refused to refund a liquor license fee despite all parties' ignorance of a federal treaty that prohibited the sale of intoxicating liquors in that area. The court stated that "[t]here was no mistake of fact in this case. The treaty was notice to all concerned. It may have been unknown in fact, but that does not relieve the situation as a matter of law." *Id.* at 19, 170 N.W. at 705. In other situations more closely related to the instant case, however, some courts have reached different conclusions. In *Golem v. Fahey*, 191 Cal.App.2d 474, 13 Cal.Rptr. 63 (1961), for example, a California appeals court held that the parties' ignorance of a zoning ordinance restricting certain property to agricultural use constituted a mutual mistake of fact. In an earlier case, *Hannah v. Steinman*, 159 Cal. 142, 112 P. 1094 (1911), the California Supreme Court or-

dered the rescission of a lease where the parties were ignorant of an ordinance prohibiting the construction of wooden buildings and both parties were aware that the lessee had intended to build a wooden building on the property. The court remarked:

> If an effectual prohibition against a wooden building on this lot had been imposed by the terms of a prior conveyance, and this lease had been given and received in ignorance of the existence thereof, it would probably not be questioned that the mistake would be of such a nature as to enable the lessee to rescind, the prohibition amounting to a practical and material impairment of the estate contemplated by the parties. Here we have practically the same result because of an ordinance of the city of which the parties were ignorant. We cannot believe that the equitable rules relative to mistake should be so narrowly construed as to require us to hold that this mistake did not go to the very essence of the contract between these parties.

*Id.* at 150, 112 P. at 1098. In these cases, the parties' failure to research city ordinances was apparently considered irrelevant; moreover, they were not held to have had constructive knowledge of the ordinances. Furthermore, respondents' argument that the conveyance may not be rescinded on the ground that the mistake was one of law rather than of fact is not particularly significant in light of this court's statement in *Peterson v. First National Bank*, 162 Minn. 369, 203 N.W. 53 (1925), that "[t]he idea that equity has no relief from mistakes of law had its origin in the almost humorous and wholly supposititious presumption that all know the law—a proposition contrary to both law and sense." *Id.* at 375, 203 N.W. at 55.

Appellant made reasonable inquiry concerning the property's zoning status; although he had purchased real estate on several previous occasions, he had never before found it necessary to go to City Hall to determine whether additional zoning restrictions existed. He had no reason to suspect that any such restriction prohibited the development of the property. Respondents thought that they were selling property suitable for commercial use; appellant thought that he was buying property suitable for commercial use. We therefore hold that a mutual mistake of fact occurred that entitled appellant to a rescission of the conveyance. He is to reconvey the property to respondents, who are hereby ordered to return to him the full purchase price plus interest at the rate of six percent per year pursuant to Minn.Stat. § 334.01 (1980).

Reversed.