## CIRCUIT COURT OF THE CITY OF WILLIAMSBURG AND JAMES CITY COUNTY

Jozef Kubacka

v.

William W. Fisher et al.

Case No. (Chancery) 8266

William W. Fisher et al.

v.

Jozef Kubacka

Case No. (Chancery) 5617

December 19, 1991

BY JUDGE WILLIAM L. PERSON, JR.

Jozef Kubacka, a real estate developer, desired to purchase a tract of land in James City County for the development of a residential subdivision. He contacted Lawrence Barrick of Horsley Real Estate, Ltd., to locate a parcel for him. FCR through its agent, Linwood Clements, had signed an exclusive listing agreement with Mr. and Mrs. William Fisher to sell a parcel of James City County real property known as the Indian Village Campground. In December of 1989, Kubacka, the Fishers, and Barrick met to discuss Kubacka's possible purchase of the land. The discussion centered around the use of 22 acres of the subject property and its A-2 zoning. Fisher produced an A-2 zoning document which they used to compute that between 49 to 53 lots could be used for residences on the subject property. There was some discussion that after the roads were taken into consideration, at least 40 lots could be developed on the property. These calcu-

lations were based on a lot being 17,500 square feet in size, as set out in the zoning document. Fisher, Kubacka and Barrick disagree as to what was said in regards to the validity of the A-2 zoning document presented by Fisher. Fisher testified that on producing the document, he informed Kubacka that he had it for several years, that he did not know if any changes had been made, and that Kubacka had better "check it out." Kubacka and Barrick specifically deny that Fisher made any such statements.

At a meeting with Fisher, Barrick and Clements present the following day, Kubacka presented two contracts to the Fishers. One contract had a contingency that part of the purchase price, as evidence by a note, would be paid when Kubacka was authorized 40 lots by the county. This contract was not produced at trial. The second contract had a lower purchase price with no contingency as to County authorization of 40 lots. Both contracts were refused by the Fishers. During these negotiations and prior to the execution of a contract with no contingencies, Kubacka and Barrick testified that there were continuous calculations by the parties that the property could be used for approximately 50 lots, that both Mr. Fisher and Clements assured them that the property could be used for 40 plus lots, that the contingency of the 40 lots dealt with the time of the payment of the note, and that no statement was ever made to "check it out." Fisher and Clements deny making these statements and, on the contrary, testified that Fisher said the A-2 zoning document was an old document. Kubacka testified that the Fishers were interested in being paid quickly, and that was the reason for removing the contingency from the final contract. This testimony was not contradicted.

The contract was signed, and the closing took pace on December 28, 1989.

In January of 1990, Mr. Kubacka discovered that although the property was zoned A-2, the particulars of the ordinance allowed for only 5 residential lots. Kubacka filed this action to rescind and cancel the conveyance of the real property.

The Court as the trier of fact resolves the conflict in the testimony and credibility in favor of Kubacka. The Court believes the testimony of Kubacka and Barrick for numerous reasons. One of these reasons is that Barrick's testimony is given against his interest. If the Court were to find in favor of the Fishers, Barrick is entitled to a

commission. Contrary to his monetary interest, Barrick's testimony corroborates Kubacka's, and the Court finds this testimony compelling.

The Court also finds that Clements was an agent for the Fishers and that Barrick was an agent for Kubacka and the Fishers. If, however, Barrick was not an agent for either the Fishers or Kubacka, it would not change the Court's finding in favor of Kubacka.

The law in Virginia allows the rescission of a contract when there is a mutual mistake of fact. A mutual mistake of fact is defined as a plain mistake or misapprehension of fact, though not the effect of fraud, where the error is material and goes to the substance of the contract so that the purchaser does not get what he bargained for. *See, e.g., Miller v. Reynolds*, 216 Va. 852 (1976); *Boone v. Scott*, 166 Va. 644 (1936). The mutual mistake must be proved by the party alleging the mistake by clear and convincing evidence. *See, Watson v. Hoy*, 69 Va. (28 Gratt.) 698 (1877); *Fox-Sadler v. Norris Roofing Co.*, 229 Va. 106, 109 (1985).

In this case, Kubacka clearly met this burden. Mr. Kubacka wanted land for a large residential subdivision, and the sellers knew of this fact. During negotiations, the purpose for buying was both stated and discussed. Also the superseded A-2 zoning ordinance was used to determine the number of homes that could be placed on the property (53). Assurances were made to Kubacka by Fisher and Clements that at least 40 lots could be developed for residential purposes, upon which assurance Kubacka relied, and both parties were under the mutual mistake of fact that this could be done. The A-2 ordinance actually in effect, however, severely limited the number of homes that Kubacka could place on the lot. Under the actual zoning, the lot size per home was almost doubled, and only five homes could be built without a special use permit. Based on these facts, the mistake as to the ability to develop the lot was material, went to the substance of the contract, and the purchaser did not get what he bargained for. (Many sister states also grant the rescission of deeds when the actual zoning is not as expected when the deal was closed. *See, e.g., Gardner Homes, Inc. v. Virginia Dare Associates*, 31 N.C. App. 118, 228 S.E.2d 525 (1976), the use of real property permissible under a zoning ordinance is a fact, and a mutual mistake with respect thereto entitles either party to an avoidance of the contract when such fact goes to the essence of the agreement; *Gartner v.*

*Eikill*, 319 N.W.2d 397 (Minn. 1982), ignorance of development restrictions in zoning ordinance could be considered a mutual mistake of fact justifying rescission of conveyance.)

There is no doubt that the parties at the time of the contract and closing were mutually mistaken as to the lot size requirement and number of lots permissible under the zoning. The evidence is not in conflict because both parties stated that they relied on the superseded A-2 ordinance to determine the number of lots possible. Also, there is no doubt that the mistake went to a material fact. The purpose for which the plaintiff desired to purchase the land was so that a large subdivision could be built. Fisher was well informed of this plan. The actual zoning, however, with its almost double lot size requirement and use permit requirement for more than five homes prevented the accomplishment of that very purpose. Since the elements are met by clear and convincing evidence, the court finds a mutual mistake of fact to be present.

The court, however, should not grant equitable relief if some equitable defense bars it. In this case, the defenses of Laches, Estoppel and Negligence (Lack of Diligence) are put forward as reasons not to rescind the conveyance.

In *Miller v. Reynolds*, 216 Va. 852, 856 (1976), the Virginia Supreme Court stated that a rescission must be sought promptly or within a reasonable time or the right to rescind is lost. In the present case, Mr. Kubacka did not allow for undue delay before seeking a rescission. The contract was closed on December 28, 1989. Kubacka discovered the switch in zoning on January 10, 1990, and tried to reconcile the problem with the Fishers. With the failure of these reconciliation attempts, Kubacka filed suit demanding rescission on June 27, 1990. There was no reasonable delay on Kubacka's part during this five-and-one-half month time period. Being from out of state, Kubacka had to select an attorney to handle the matter, and the attorney needed time to develop the legal theory and factual basis of the suit. The six-month period between closing and suit is much shorter than the eleven-month period allowed in *Miller*. Also, during no time did Kubacka display an indication to abandon the claim.

A second defense raised is estoppel. Fisher claims that Kubacka's asking for the forty-house contingency but then closing without such a contingency bars the rescission claim. Fisher, however, misinterprets Kubacka's reason for wanting the contingency. The contin-

gency was to act as a triggering mechanism for the payment of the first note, not as a contingency for the conveyance to be revoked if it was not met. Since the contingency was merely a triggering mechanism for payment, Kubacka is not estopped from bringing suit. Evidence of the contingency being simply a triggering mechanism for payment is that Kubacka did not need the contingency for the number of homes because Fisher and his agents had already assured him that there was no problem in getting forty homes on the lot.

Fisher's final defense is that Kubacka's negligence in not going to check the correct zoning ordinance bars his suit. Although some states put a reasonable diligence requirement on the plaintiff before he can rescind a contract, the Virginia courts do not. As stated in *Banker's Ins. Co. v. Henderson*, 196 Va. 195, 209, 83 S.E.2d 424, 432 (1954), "[t]he negligent failure of a party to know or discover the facts, as to which both parties are under a mistake does not preclude rescission or reformation on account thereof." Since both parties were acting under a mutual mistake, Kubacka's failure to discover the correct zoning is not a bar to rescission, especially since Fisher and his agent(s) assured Kubacka that there would be no problem in getting forty homes on the lot.

Since there was a mutual mistake and no equitable defenses apply, the contract and deed are rescinded.