[No. D009059. Fourth Dist., Div. One. Aug. 15, 1989.]

AUTOMATIC SPRINKLER CORPORATION, Plaintiff and Appellant, v.
SOUTHERN CALIFORNIA EDISON COMPANY, Defendant and Respondent.

## COUNSEL

Buchalter, Nemer, Fields & Younger, Bernard E. Le Sage, Steven M. Schott and Annee Della Donna for Plaintiff and Appellant.

James P. Montague and Donna M. Rovero for Defendant and Respondent.

## OPINION

**TODD, Acting P. J.**—Automatic Sprinkler Corporation of America, a division of Figgie International, Inc. (Automatic), appeals after the trial court granted a summary judgment for Southern California Edison Company (Edison) in Automatic's action to enforce a mechanic's lien and to impose liability on Edison for failing to require its general contractor on the San Onofre Nuclear Generating Station (SONGS) to post a payment bond as required for public entities in the construction of public works pursuant to Civil Code section 3247.[1]

Automatic contends the summary judgment was erroneously granted because there are triable issues of material fact concerning (1) whether

---

[1] All statutory references are to the Civil Code unless otherwise specified.

Edison was a "public entity" engaged in a "public work" for purposes of the payment bond requirement of section 3247, (2) when the completion date of the SONGS project occurred for purposes of determining the timeliness of filing the mechanic's lien, and (3) whether Edison is estopped to rely on Automatic's mechanic's lien misfiled in Orange County rather than San Diego County as a basis for obtaining summary judgment. Automatic asserts legal error alone in the trial court's application of section 3144 to nullify any lien because of Automatic's failure to comply with the section's requirement that an action to foreclose the lien must be commenced in the proper court within 90 days after the recording of the claim of lien.

Concluding that section 3144 precludes recovery in the case thus rendering other asserted factual issues immaterial, and that Edison very clearly is not a public entity for purposes of the payment bond provision of section 3247, we hold the trial court properly granted summary judgment.

FACTS

SONGS is private property partially owned by Edison which contracted with C.F. Opel, Inc. (Opel), general contractor for a work of improvement at SONGS. In May 1985 Automatic, as subcontractor, entered a series of written agreements with Opel to furnish labor and material for the work of improvement at SONGS. Opel has since come under the protection of the federal bankruptcy laws.

Under its contract with Opel, Automatic installed a fire sprinkler protection system in the administration and other buildings on the SONGS property. The total amount of $119,369.19 became due Automatic from Opel. A balance of $73,099.89 remains unpaid.

After filing stop notices with Edison and written preliminary notices with Opel and Edison, on June 11, 1986, Automatic recorded with the Orange County Recorder its verified claim of mechanic's lien. SONGS is in San Diego County which is where the claim of lien was required to be filed.

On August 21, 1986, in the Orange County Superior Court, Automatic filed an action to foreclose its mechanic's lien, also alleging Edison was negligent in failing to require Opel to file a payment bond before Opel's commencement of the SONGS work of improvement.

After discovering its filing error, on October 13, 1986, Automatic recorded a mechanic's lien with the San Diego County Recorder. On October 31,

1986, Automatic filed a motion in the Orange County Superior Court for transfer of the action to the San Diego County Superior Court. The motion was set to be heard December 2, 1986.

In the meantime, in a bankruptcy proceeding filed by Opel in Texas, Edison sought and obtained a series of 10-day restraining orders covering the period October 30, 1986, through December 11, 1986. The December 2, 1986, hearing in Orange County Superior Court on Automatic's motion for transfer to San Diego County Superior Court was taken off calendar.

On January 29, 1987, Automatic refiled its motion for transfer, and on February 23, pursuant to stipulation of the parties, the matter was ordered transferred to San Diego County Superior Court. Notice of the order for change of venue was filed in Orange County on March 17, and San Diego County Superior Court officially received the transferred action on March 30.

Edison's notice of motion for summary judgment dated April 25, 1988, was set for hearing on June 23, 1988, and actually heard July 19, 1988. An order for entry of summary judgment and the summary judgment were filed September 30, 1988.

## Discussion

### I

*Payment Bond Requirement Inapplicable to the
Private Corporation, Edison.*

Section 3247, subdivision (a), provides in pertinent part: "Every original contractor to whom is awarded a contract by a *public entity,* except as provided in subdivision (d) of Section 7103 of the Public Contract Code, involving an expenditure in excess of twenty-five thousand dollars ($25,000) for any *public work* shall, before entering upon the performance of the work, file a payment bond with and approved by the officer or public entity by whom the contract was awarded." (Italics added.)

Automatic ignores plain statutory language defining "public entity" and "public work," and uncontradicted evidence showing the private corporate status of Edison, in seeking to extend the payment bond protection of

section 3247 (see §§ 3096, 3181, 3248, 3252)[2] to the SONGS work of improvement in which it participated. Principles of liberal construction favoring laborers and materialmen (see *Hutnick* v. *United States Fidelity & Guaranty Co.* (1988) 47 Cal.3d 456, 462 [253 Cal.Rptr. 236, 763 P.2d 1326]) do not aid Automatic in this case. Definitions of "public entity" and "public work" contained in sections 3099 and 3100 govern the construction of section 3247. (§ 3082.)

" 'Public entity' means the state, Regents of the University of California, a county, city, district, public authority, public agency, and any other political subdivision or public corporation in the state." (§ 3099.)

" 'Public work' means any work of improvement contracted for by a public entity." (§ 3100.)

It is not disputed that Edison is an investor-owned public utility engaged in the business of generating, transmitting and distributing electrical energy in portions of Southern and Central California by operating an interconnected and integrated electric utility system. Edison is a for-profit corporation having its rates regulated and authorized by the California Public Utilities Commission. Edison's rates include an authorized rate of return which is part of the profit Edison receives from owning and operating the SONGS plant.

Edison owns and operates an 80 percent interest in SONGS unit No. 1 and a 75.05 percent interest in unit Nos. 2 and 3. Although SONGS is among Edison's utility properties dedicated to public service for the purpose of generating, transmitting and distributing electrical energy to Edison's utility customers, the nuclear generating facility is private property.

■ The fact that Edison is a public utility subject to control by the Legislature (Cal. Const., art. XII, § 3) places it in a well-known, separate category that is not included in the definition of public entity. The Legislature, of course, easily could have included public utilities subject to legislative control within the definition of public entity for purposes of the mechanics' lien laws. It did not. Otherwise, it is clear the investor-owned, for-profit public utility, Edison, with its private ownership interest in SONGS, fits in no other categories of what are public entities for purposes of those laws.

---

[2] Mechanic's lien protection is unavailable to public works. (§ 3109.)

Automatic's reliance on *Gay Law Students Assn.* v. *Pacific Tel. & Tel. Co.* (1979) 24 Cal.3d 458, 468-470 [156 Cal.Rptr. 14, 595 P.2d 592]) (*Pacific Tel.*) is misplaced. *Pacific Tel.* concerned interpretation of the equal protection clause in the state Constitution (Cal. Const., art. I, § 7, subd. (a)), which does not contain a state action requirement as do the Fifth and Fourteenth Amendments to the Constitution of the United States. This state constitutional provision nevertheless is not to be applied without regard to any state action doctrine whatsoever (24 Cal.3d at p. 468), and federal state action decisions, though not binding, are to be considered carefully when applying the provision. (*Id.* at p. 469.) In this context *Pacific Tel.* considered the narrow issue of whether "the California constitutional equal protection guarantee [is] violated when a privately owned public utility, which enjoys a state-protected monopoly or quasi-monopoly, utilizes its authority arbitrarily to exclude a class of individuals from employment opportunities?" (*Ibid.*)

It is readily seen that the issue, body of law, and subject matter of *Pacific Tel.* have no bearing or relationship to this case. Here, we are involved with only a matter of applying the mechanic's lien laws, including provisions explicitly defining terms such as "public entity," in a manner that excludes private, investor-owned public utilities. There is no equal protection issue derived from arbitrary employment exclusion involved here. The simple undisputed fact in this case is that Edison is not a "public entity" as that term is defined in section 3099.

The conclusion follows that because Edison is not a public entity which awarded a contract for a public work, the payment bond provisions of section 3247, subdivision (a), are inapplicable to this case. Accordingly, Edison could not be negligent in failing to require such a payment bond and the summary judgment was properly granted on this basis.

## II

*Having Failed to Commence Its Action to Foreclose the Lien in a Proper Court Within 90 Days After Recording the Claim of Lien, Automatic Is Barred From Bringing the Action.*

Section 3144 provides:

"(a) No lien provided for in this chapter binds any property for a longer period of time than 90 days after the recording of the claim of lien, unless within that time an action to foreclose the lien is commenced in a proper court, except that, if credit is given and notice of the fact and terms of such credit is recorded in the office of the county recorder subsequent to the

recording of such claim of lien and prior to the expiration of such 90-day period, then such lien continues in force until 90 days after the expiration of such credit, but *in no case longer than one year from the time of completion of the work of improvement.*

"(b) If the claimant fails to commence an action to foreclose the lien within the time limitation provided in this section, the lien automatically shall be null and void and of no further force and effect."

Automatic's complaint, filed in Orange County on August 21, 1986, and transferred to San Diego County on March 30, 1987, seeks only to foreclose on its mechanic's lien recorded in Orange County on June 11, 1986. That was the state of the case before the trial court on the motion for summary judgment heard July 19, 1988, in San Diego County Superior Court.

■■■ It is beyond dispute the action to foreclose the lien was not "commenced in a proper court." (§ 3144, subd. (a).) "[T]he phrase 'a proper court' can refer only to a court in which . . . the action shall be commenced, that is, *a court of the county in which the land is located." (States Shingle Co.* v. *Kaufman* (1964) 227 Cal.App.2d 830, 835 [39 Cal.Rptr. 196].) *States Shingle* was construing former Code of Civil Procedure section 1198.1, subdivision (a),[3] predecessor to section 3144, subdivision (a). Though *States Shingle* was relying on constitutional venue provisions (former Cal. Const., art. VI, § 5) for the source of the rule prescribing where an "action shall be commenced," the same rule pertains to this action to enforce a lien. (Code Civ. Proc., § 392, subd. (1)(b), provides in part, "the county in which the real property, which is the subject of the action . . . is situated, is the proper county for the trial of the following actions: [¶] (b) For the foreclosure of all liens and mortgages on real property.") *States Shingle* thus represents precedential authority for construing and applying section 3144, subdivision (a).

*States Shingle* involved an action to foreclose a lien filed in the wrong county within 90 days of the recording of the lien in the proper county, but transferred to the proper county approximately 11 months later. The court examined the operation of the statute and observed, "[o]nce the 90-day suit filing period has expired, the landowner, as well as the purchaser and encumbrancer, may rely upon the record in the county where the land is

---

[3] Former Code of Civil Procedure section 1198.1 provided, in part: "(a) No lien provided for in this chapter binds any property for a longer period than 90 days after the same has been filed except as hereinafter provided, unless within that time, proceedings to enforce the same be commenced in a proper court. . . ."

located." (*States Shingle, supra*, 227 Cal.App.2d at p. 836.) *States Shingle* concluded, "the present foreclosure action was not commenced in or *transferred to* a proper court within 90 days after filing of the lien claim, hence foreclosure is barred by the 90-day period of limitations." ■ (*Ibid.*, italics added.)[4]

■ Likewise here, since Automatic's action to foreclose the lien was neither commenced in the proper court nor transferred to the proper court within 90 days, foreclosure is barred under section 3144, subdivision (a). It follows, the summary judgment was properly granted on this basis. (See also *Douglas* v. *Donner Pines, Inc.* (1977) 73 Cal.App.3d 268, 271-272 [140 Cal.Rptr. 839]; *Halbert's Lumber, Inc.* v. *Burdett* (1988) 202 Cal.App.3d Supp. 14, 17-19 [249 Cal.Rptr. 285].)

In light of this conclusion, it is readily apparent that Automatic's argument concerning attributing some tolling effect to the federal restraining orders in effect from October 30 to December 11, 1986, cannot aid Automatic's cause. By October 30, 1986, the 90-day period for commencement of the action in the proper court or for transfer of the action to the proper court had long since passed.

We note too, assuming the mechanic's lien filing in Orange County was timely, Automatic's belated October 13, 1986, recording of a mechanic's lien in San Diego County, approximately four months after it recorded the

---

[4]Since the decision in *States Shingle,* the 90-day period of former Code of Civil Procedure section 1198.1 has been held to be merely a statute of limitations rather than a statute affecting a substantive right. (*Petersen* v. *W. T. Grant Co.* (1974) 41 Cal.App.3d 217, 221-222 [115 Cal.Rptr. 874]; *Robinson* v. *S & S Development* (1967) 256 Cal.App.2d 13, 15 [63 Cal.Rptr. 663].)

Edison does not simply seek to apply the 90-day limitation of section 3144, subdivision (a), but rather also asserts the "proper court" provision as well as the substantive "null and void" repercussion of a late action commencement clearly set forth in subdivision (b). It is most significant that effective January 1, 1985 (Stats. 1984, ch. 871, § 1, p. 2944), the Legislature added subdivision (b) to section 3144 specifying that where there is a failure to timely commence an action to foreclose the lien, "the lien automatically shall be null and void and of no further force and effect." This language makes it clear that a failure to timely commence the action terminates the substantive right to a lien. It is not merely a statute of limitations. Thus the Legislature has abrogated the holdings of the *Peterson* and *Robinson* cases, *supra,* that the section merely involves a statute of limitations.

Moreover, under our liberal rules of pleading (Code Civ. Proc., § 452), we believe Edison has sufficiently raised the issue in its answer, having pled that the fifth cause of action seeking to foreclose a mechanic's lien "is barred as Plaintiff failed to properly record its claim of lien in the manner required by the California Civil Code." (Cf. *Petersen* v. *W. T. Grant Co., supra,* 41 Cal.App.3d at pp. 223-224.)

Thus, we apply section 3144 in this case as a substantive bar to proceeding with the action to foreclose a mechanic's lien.

mechanic's lien in Orange County, apparently runs afoul of other time limitations of the mechanic's lien law. (See § 3115, in order to enforce a lien, lien must be recorded within 90 days after completion of the work of improvement or within 60 days of recordation of notice of completion or notice of cessation.) There is no suggestion the Orange County mechanic's lien was other than timely filed.

In this connection, however, in light of the conclusion the action is barred under section 3144, subdivision (a), Automatic's argument there is an issue of material fact concerning the date of completion for the SONGS project avails it no advantage. Resolution of the completion date question is immaterial to the conclusion the action is barred under section 3144, subdivision (a).

■ Likewise, there is no merit to Automatic's argument there is an issue of material fact concerning whether Edison is estopped to rely on the misfiled mechanic's lien because Edison supplied a San Clemente, Orange County office as its business address. Automatic did not plead this issue. (See *Insurance Co. of the West* v. *Haralambos Beverage Co.* (1987) 195 Cal.App.3d 1308, 1320-1321 [241 Cal.Rptr. 427].) Further, so far as we can determine, it was only indirectly asserted in the motion for summary judgment. Given the physical location of SONGS in San Diego County, a fact readily determinable by reference to a map or even a freeway sign near the site, (see Evid. Code, § 452, subds. (g) & (h)) the listing of an Orange County business address for the owner as a matter of law could not alone give rise to an estoppel.

■ Finally, raising the issue for the first time in its appellant's reply brief, Automatic argues that Public Utilities Code section 851[5] "precludes the recording and enforcement of a mechanic's lien against SONGS." Although we need not consider this argument (see 9 Witkin, Cal. Procedure (3d ed. 1985) Appeal, § 496, pp. 484-485), we point out that it is not

---

[5] Public Utilities Code section 851 provides in part: "No public utility . . . shall sell, lease, assign, mortgage, or otherwise dispose of or encumber the whole or any part of its . . . line, plant, system, or other property necessary or useful in the performance of its duties to the public . . . without first having secured from the commission an order authorizing it so to do. Every such sale, lease, assignment, mortgage, disposition, encumbrance . . . made other than in accordance with the order of the commission authorizing it is void. . . .

"Nothing in this section shall prevent the sale, lease, encumbrance or other disposition by any public utility of property which is not necessary or useful in the performance of its duties to the public, and any disposition of property by a public utility shall be conclusively presumed to be of property which is not useful or necessary in the performance of its duties to the public, as to any purchaser, lessee or encumbrancer dealing with such property in good faith for value . . . ."

meritorious. The plain terms of Public Utilities Code section 851 permit an encumbrance if, among other things,[6] the Public Utilities Commission first issues an authorizing order. Thus, the section does not "preclude" a mechanic's lien.

DISPOSITION

Judgment affirmed.

Benke, J., and Froehlich, J., concurred.

---

[6] Also, under the terms of Public Utilities Code section 851, if the property is "not necessary or useful" in the performance of the public utility's duties to the public, there is no prohibition of a transfer. (See *Golconda Utilities Company* (Dec. 21, 1965) Dec. No. 70113.)