GAYLE MANUFACTURING COMPANY, INC., A California corporation, Plaintiff–Appellee/Cross–Appellant,

v.

FEDERAL SAVINGS AND LOAN INSURANCE CORPORATION, as Receiver for State Federal Savings and Loan Association, Defendant–Appellant/ Cross–Appellee.

Nos. 89–15089, 89–15103.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted March 14, 1990.

Decided Aug. 3, 1990.

James P. Watson, Stanton, Kay & Watson, San Francisco, Cal., for defendant-appellant/cross-appellee.

Barbara Peyton, Peyton & Associates, Sacramento, Cal., for plaintiff-appellee/cross-appellant.

Before SNEED, FARRIS and FERNANDEZ, Circuit Judges.

SNEED, Circuit Judge:

The Federal Savings and Loan Insurance Corporation ("FSLIC") appeals from those portions of the district court's declaratory judgment that were in favor of Gayle Manufacturing Company ("Gayle"). Gayle cross-appeals, seeking to reverse the district court's ruling on the proper measure of damages and its denial of Gayle's motion for attorneys' fees. Gayle also seeks attorneys' fees for the instant appeal.

## I.

### FACTS AND PROCEEDINGS BELOW

The facts in this case, which have their origin in a failed savings and loan association, are not in dispute. Gayle entered into a contract with Jack and Edith Anderson (the "Andersons") on June 7, 1984, for the construction of two warehouse buildings on property owned by the Andersons. In August 1984, the Andersons assigned their interest in the construction contract to State Federal Savings and Loan Association ("State Federal"), the construction lender. Gayle recorded a notice of completion on February 28, 1985. Because it had not been paid in full by the Andersons or the lender, Gayle filed a mechanic's lien on March 15, 1985, and filed a suit to foreclose on the lien in the Yolo County Superior Court on June 11, 1985 (hereinafter referred to as the "first state action"). Among the defendants Gayle named in that suit were the Andersons and State Federal.

After FSLIC was appointed receiver for State Federal, it was substituted for State Federal in the first state action. In February 1986, FSLIC informed Gayle that, pursuant to *North Mississippi Savings & Loan Association v. Hudspeth*, 756 F.2d 1096 (5th Cir.1985), *cert. denied*, 474 U.S. 1054, 106 S.Ct. 790, 88 L.Ed.2d 768 (1986), it intended "to remove the case to federal court and immediately move to dismiss." *Hudspeth* appeared to justify FSLIC's action. Stating that Gayle's "opposition to such a motion would doubtless be fruitless and a waste of ... resources," FSLIC urged Gayle voluntarily to dismiss FSLIC from the action and to pursue its claim "through the FSLIC administrative channels." Gayle and FSLIC filed a stipulated agreement on March 4, 1986, in which Gayle dismissed FSLIC without prejudice from the Yolo County action "in favor of [FSLIC's] administrative claims process."

Immediately thereafter, Gayle contacted FSLIC's counsel, indicating its desire to pursue administrative procedures with FSLIC and requesting further instruction. FSLIC's counsel responded that Gayle would receive information regarding the procedure from FSLIC. Gayle proceeded with the Yolo County action against the remaining parties and, on April 2, 1986, secured a judgment and decree of foreclosure on its mechanic's lien. Because FSLIC had been dismissed from the action, Gayle was unable to execute its decree.

FSLIC, now attempting to realize on State Federal's assets, gave notice of its intention to foreclose on the property on August 27, 1986. In response, Gayle filed another action in Yolo County Superior Court against FSLIC, seeking a declaration that its lien was prior and superior to State Federal's deed of trust and seeking an injunction preventing FSLIC from foreclosing (hereinafter referred to as the "second state action"). On December 1, 1986, FSLIC again notified Gayle of its intention to remove the action to federal court and to have it dismissed under the authority of *Hudspeth.* It warned Gayle that it would also seek recovery of costs and attorneys' fees pursuant to Fed.R.Civ.P. 11. On December 4, 1986, Gayle dismissed the second state action without prejudice. Gayle contacted FSLIC's regional director on December 4, 1986, again noting its desire to pursue administrative procedures and requesting that FSLIC consider its letter a formal claim. FSLIC sent Gayle a claim form shortly thereafter, and Gayle submitted the form on December 17.

FSLIC scheduled another foreclosure sale for April 17, 1987. To prevent the sale, Gayle filed the federal action now before us on April 16, 1987, seeking injunctive and declaratory relief. Gayle sought a stay of the foreclosure sale by FSLIC until adjudication of the relative priority of Gayle's and FSLIC's claims on the property. At the time of filing, Gayle asserted that FSLIC still had not adjudicated its claim administratively. On August 27, 1987, FSLIC informed Gayle that it was in the process of reviewing its claim.

On October 21, 1987, the district court permitted FSLIC to proceed with a foreclosure sale, but protected Gayle's interest by ordering FSLIC to "post security with the Clerk of the Court in the amount of 1½ times plaintiff's recorded mechanics lien" pursuant to Cal.Civ.Code § 3143 (West 1974). FSLIC complied with the order, and deposited $310,000 with the court several days later.

Gayle filed a motion for summary judgment on October 23, 1987, urging the court to rule:

(1) That Gayle's mechanic's lien rights to the Anderson property are prior to FSLIC's interests in that property;

(2) That Gayle's mechanic's lien was properly perfected and preserved;

(3) That FSLIC was bound by an express and implied contract to honor the Anderson's financial obligations to Gayle which allegedly were assumed by State Federal;

(4) That the proper measure of damages under the contract theory was the contract amount, interest, attorneys' fees and court costs;

(5) That FSLIC must pay Gayle's attorneys' fees;

(6) That sanctions against FSLIC's attorney under Fed.R.Civ.P. 11 are proper for alleged misrepresentations, misstatements, and innuendo by him.

In a February 23, 1988 order, the district court granted the motion in part and denied it in part. Specifically, the district court granted summary judgment on the issues of priority and perfection. (Claims 1 and 2.) It denied the motion on the contractual liability and damages issues. (Claims 3 and 4.) The district court deferred questions relating to sanctions. (Claims 5 and 6.) At trial, Gayle pursued the question of the nature and amount of damages FSLIC owed Gayle as receiver for State Federal. On December 22, 1988, the district court issued a declaratory judgment and its findings of fact and conclusions of law. It found that Gayle was entitled to recover on "its mechanic's lien ... the unpaid contract amount or the reasonable value of labor, equipment and materials provided, whichever is less" plus interest from the date of recordation of the lien, or $205,280 in principal and $53,886.03 in interest. The court also ruled that FSLIC was not liable to Gayle under a contractual theory (Claims 3 and 4), for bad faith, or for attorneys' fees (Claims 5 and 6).

In this appeal, FSLIC asserts that Gayle's action below was barred by the applicable statute of limitations and that Gayle improperly split its action by bringing multiple lawsuits arising out of the same lien claim. Gayle cross-appeals, con-

tending that FSLIC is estopped from denying Gayle's right to bring the instant action and that FSLIC should be estopped from raising certain issues on appeal. Gayle also reasserts that its lien rights were properly perfected and preserved (Claims 1 and 2), that attorneys' fees should have been awarded below (Claim 5), and that the proper measure of damages is the present day value of the construction work completed by Gayle. Finally, it requests attorneys' fees on appeal. The latter two are new claims. This court has jurisdiction under 28 U.S.C. § 1291 (1982).

## II.

## STANDARDS OF REVIEW

■ The required litany of standards of review need not be long. We review de novo grants of declaratory relief, *Guerra v. Sutton*, 783 F.2d 1371, 1376 (9th Cir. 1986), and interpretations of state law, *Matter of McLinn*, 739 F.2d 1395, 1397 (9th Cir.1984) (en banc).

■ Although we review a district court's computation of damages for clear error, we review the district court's selection of the correct legal standard for measuring damages de novo. *Galindo v. Stoody Co.*, 793 F.2d 1502, 1516 (9th Cir. 1986).

■ When reviewing a district court's grant or denial of attorneys' fees under the bad faith standard, we determine whether the court committed clear error in finding bad faith or not. *Dollar Sys., Inc. v. Avcar Leasing Sys., Inc.*, 890 F.2d 165, 175 (9th Cir.1989). If the district court found bad faith, we review the decision to make the award for abuse of discretion. *Id.*

## III.

## DISCUSSION

A. *The Survival of Gayle's Lien Rights*

We turn first to Claims 1 and 2, the survival of Gayle's lien rights. At this point some litigation history is necessary. FSLIC routinely asserted in cases such as Gayle's that it had "exclusive jurisdiction to adjudicate claims against the assets of an insolvent thrift association placed in a FSLIC receivership" and that "judicial jurisdiction is limited to reviewing the agency's determinations under the Administrative Procedures Act" ("APA"). *Morrison–Knudsen Co., Inc. v. CHG Int'l, Inc.*, 811 F.2d 1209, 1212 (9th Cir.1987). The Fifth Circuit had adopted FSLIC's position in *North Mississippi Savings & Loan Association v. Hudspeth*, 756 F.2d 1096 (5th Cir. 1985), *cert. denied*, 474 U.S. 1054, 106 S.Ct. 790, 88 L.Ed.2d 768 (1986). We rejected FSLIC's position in *Morrison–Knudsen Co., Inc. v. CHG International, Inc.*, 811 F.2d 1209 (9th Cir.1987). We concluded in *Morrison–Knudsen Co.* that "FSLIC's assertion of adjudicatory power in its receivership capacity is unsupported by the statutory language and inconsistent with congressional intent." *Id.* at 1222. Two years later, the Supreme Court reached the same conclusion in *Coit Independence Joint Venture v. FSLIC*, 489 U.S. 561, 109 S.Ct. 1361, 103 L.Ed.2d 602 (1989).

> This case presents the question whether Congress granted [FSLIC], as receiver, the exclusive authority to adjudicate the state law claims asserted against a failed savings and loan association. We hold that Congress did not grant FSLIC such power and that the creditors of a failed savings and loan association are entitled to *de novo* consideration of their claims in court. We also hold that creditors are not required to exhaust FSLIC's current administrative claims procedure before filing suit because the lack of a clear time limit on FSLIC's consideration of claims renders the administrative procedure inadequate.

*Id.* 109 S.Ct. at 1364.

The facts of the instant case unfolded against this evolving legal backdrop. When Gayle filed its first state action in June 1985, the parties reasonably could have assumed that the conclusions reached by the *Hudspeth* court in May 1985 would be adopted in this circuit as well. Thus, each time Gayle sought judicial relief, FSLIC informed Gayle that it would attempt to remove Gayle's foreclosure action

to federal court and that it would move for dismissal under the authority of *Hudspeth.* FSLIC insisted, consistent with *Hudspeth,* that Gayle's only remedy against FSLIC's interest in the Anderson property was FSLIC's own administrative procedures.

Gayle, it cannot be gainsaid, attempted to pursue FSLIC's administrative procedures, which were slow if not nonexistent in this case. No doubt Gayle reluctantly concluded that this route constituted its only option for relief. It recognized, however, that pursuant to *Hudspeth's* holdings, it would be able to avail itself of judicial review of FSLIC's administrative adjudication under the APA, once that adjudication was completed. Thus, a remedy appeared to exist, although more illusory and less robust than a reasonable person in Gayle's position would have liked.

We decided *Morrison–Knudsen, Co.* in February 1987. Shortly thereafter, FSLIC, for reasons not revealed by the record, attempted again to foreclose on the property, and in response, Gayle filed the present action in federal court. It is unlikely that Gayle would be in its present position if *Morrison–Knudsen, Co.* had been the law of this circuit at the inception of its dispute with FSLIC. Nor would it be in its present position had *Hudspeth* continued to define FSLIC's adjudicatory power, because it then would have had a good administrative claim against FSLIC. It has no such claim now because FSLIC has ceased adjudicating cases such as Gayle's, acknowledging that it does not have the adjudicatory power it had previously asserted. This result leaves Gayle with only what is before us.

This is a unique situation in which the equitable powers of the federal court should be invoked. Gayle had a valid right to payment for its services, and it acted reasonably in attempting to follow state and federal procedures to obtain satisfaction of its debt. But for the uncertainty of the law governing its remedies, Gayle might have received compensation some time ago. Although we stop short of suggesting that an equitable remedy exists

whenever parties are disadvantaged by evolving law, we believe that California law, from which Gayle's basic rights flow, provides such a remedy in this case.

1. The Distinction Between the Underlying Substantive Right to a Lien and the Lien

FSLIC does not deny that Gayle's mechanic's lien was timely recorded and that Gayle's lien claim was prior to FSLIC's interests in the Anderson property. FSLIC also does not deny that Gayle commenced its initial action to enforce its mechanic's lien within the 90 days required by the applicable statute of limitations. Cal.Civ. Code § 3144 (West Supp.1990). Rather, FSLIC asserts that the district court erred in concluding that Gayle's lien rights still survived. It argues that Gayle waived its rights to enforce its lien against FSLIC by failing to retain FSLIC as a party in the first state action and by continuing that action to final judgment after dismissing FSLIC as a party. By following this course of action, asserts FSLIC, Gayle caused its lien claim to disintegrate and forever lost its right to foreclose its lien claim against FSLIC. FSLIC claims that Gayle could have avoided this result only if it had stayed the first state action while it pursued FSLIC's administrative procedures.

We disagree. FSLIC ignores the distinction under California law between the underlying substantive right to a lien and the lien itself. *See In re Paul Potts Builders, Inc.,* 608 F.2d 1279 (9th Cir.1979); *In re Etherton,* 88 F.Supp. 874 (S.D.Cal.1950); *Coast Cent. Credit Union v. Superior Court,* 209 Cal.App.3d 703, 257 Cal.Rptr. 468 (Ct.App.1989); *Maris Mgt. Corp. v. Assured Drywall & Textures,* 152 Cal.App.3d 268, 199 Cal.Rptr. 309 (Ct.App.1984).

The California Constitution establishes the underlying substantive rights that mechanics and like workers have against the property upon which they work.[1] Consistent with the constitutional

---

1. Mechanics, persons furnishing materials, artisans, and laborers of every class, shall have a

lien upon the property upon which they have bestowed labor or furnished material for the

command, the California legislature provided for the speedy and efficient enforcement of mechanic's liens through Cal.Civ.Code §§ 3110–3112, 3115–3117, 3144 (West 1974 & Supp.1990). By recording a timely claim of lien, a claimant

> transforms [the] inchoate personal right created by [the California] Constitution into a tangible lien on the property. Only this lien, which was created by the statutory scheme, is automatically nullified by a failure to timely commence a foreclosure proceeding. The constitutional right to a lien remains and may be perfected so long as the claimant can comply with the conditions precedent set forth in the statutory scheme.

*Coast Cent. Credit Union*, 209 Cal.App.3d at 711, 257 Cal.Rptr. at 472. If the claimant cannot comply with the conditions set forth in the statutory scheme, the underlying substantive rights remain subject to equitable satisfaction in those cases where

---

value of such labor done and material furnished; and the Legislature shall provide, by law, for the speedy and efficient enforcement of such liens.
Cal. Const. art. XIV, § 3.

**2.** At present, there is disagreement among California courts as to whether Cal.Civ.Code § 3144(b) (West Supp.1990), enacted in 1984, reversed this well-established principle of California law. Section 3144(b) reads: "If the claimant fails to commence an action to foreclose the lien within the time limitation provided in this section, the lien automatically shall be null and void and of no further force and effect."

The court in *Coast Central Credit Union* held that the California legislature did not intend "to automatically and forever extinguish the inchoate personal right to a lien created by the Constitution" when it added this provision. 209 Cal.App.3d at 711, 257 Cal.Rptr. at 472. It concluded that:

> The courts will not presume "that the legislature in the enactment of statutes intends to overthrow long-established principles of law unless such intention is made clearly to appear either by express declaration or by necessary implication." Generally, doubts concerning the meaning of the mechanics' lien statutes are resolved in favor of the claimant.

*Id.* at 711, 257 Cal.Rptr. at 472 (citations omitted).

By contrast, the court in *Automatic Sprinkler Corp. v. Southern California Edison Co.*, 216 Cal.App.3d 627, 266 Cal.Rptr. 662 (Ct.App.1989), held that the language in § 3144(b) "makes it clear that a failure to timely commence the

---

justice requires us to provide a remedy. *In re Paul Potts*, 608 F.2d at 1283. We have held:

> Even when the right to foreclose is barred, the equitable interest under the lien is not extinguished if the underlying obligation continues to exist. The lien claimant retains equitable rights against the owner which can be satisfied when the owner disturbs the status quo and attempts to gain an affirmative advantage.

*Id.*[2] *See also In re Etherton*, 88 F.Supp. at 877.

 Therefore, we hold that, *even if* Gayle lost the right to foreclose on the Anderson property against FSLIC's interests when it dismissed FSLIC from the first state action, Gayle did not forfeit the underlying substantive right against the property. It survives, and is entitled to equitable remedies.[3]

---

action terminates the substantive right to a lien. It is not merely a statute of limitations. Thus, the Legislature has abrogated the holdings" of prior California precedent. *Id.* at 635 n. 4, 266 Cal.Rptr. at 666 n. 4.

We agree with the *Coast Central Credit Union* court's analysis. In the absence of more direct guidance from the legislature that it intended to abrogate such well-established doctrine, we conclude that it did not so intend. *See also California Mechanics' Liens and Other Remedies* (Cont. Ed.Bar 2d ed. 1988) § 2.30 (concluding that "[t]he most likely interpretation [of the meaning of § 3144(b) ] is that the expiration of the 90–day period results in expiration of the mechanics' lien created by that particular lien claim, but does not terminate the claimant's lien rights").

**3.** FSLIC's argument that Cal.Civ.Code § 3264 applies to this case and serves as a bar to equitable remedy of Gayle's claim by this court is incorrect. Section 3264 reads as follows:

> The rights of all persons furnishing labor, services, equipment, or materials for any work of improvement, with respect to any fund for payment of construction costs, are governed exclusively by Chapters 3 (commencing with Section 3156) and 4 (commencing with Section 3179) of this title, and no person may assert any legal or equitable right with respect to such fund, other than a right created by direct written contract between such person and the person holding the fund, except pursuant to the provisions of such chapters.

Cal.Civ.Code § 3264 (West 1974).

### 2. The Perfection of Gayle's Lien Against FSLIC's Interests in the Anderson Property

We also hold that Gayle properly perfected its lien as against FSLIC's interest in the property. Our holding is based, to a large extent, on California's strong tradition of liberal construction of mechanic's lien laws in favor of the workers to whom debts may be owed. *Hutnick v. United States Fidelity & Guar. Co.*, 47 Cal.3d 456, 462, 253 Cal.Rptr. 236, 239, 763 P.2d 1326, 1329 (1988); *Connolly Dev., Inc. v. Superior Court*, 17 Cal.3d 803, 826–27, 132 Cal.Rptr. 477, 493, 553 P.2d 637, 653 (1976); *Coast Cent. Credit Union*, 209 Cal. App.3d at 708, 257 Cal.Rptr. at 470. This tradition is grounded in California's recognition that mechanic's liens are the only creditors' remedies with a constitutional foundation. Therefore, to the extent that the relevant California code sections are ambiguous with respect to their application to the facts of this case, we construe them in favor of Gayle.

The California legislature drafted this section in response to mortgage lender protests against state court holdings that allowed lien claimants with equitable *interests* in the building loan account to obtain satisfaction prior to the lender and the builder. *Sofias v. Bank of Am. Nat'l Trust & Sav. Ass'n*, 172 Cal.App.3d 583, 586, 218 Cal.Rptr. 388, 390 (Ct.App.1985) (citing M. Marsh, California Mechanic's Lien Law Handbook, § 52.7 at 182–83 (3d ed. 1979)). This section limits claims on construction loan funds to those whose rights were "created by direct written contract." *Pankow Constr. Co. v. Advance Mortgage Corp.*, 618 F.2d 611, 616 (9th Cir.1980); *Sofias*, 172 Cal.App.3d at 586, 218 Cal.Rptr. at 390. Thus, third party beneficiaries may not recover, in that their rights are not based on a written contract.

In the instant case, there is no dispute that Gayle's mechanic's lien rights were created by a written contract between Gayle and the Andersons. In the absence of any authority applying Section 3264 as a bar to equitable *remedies* for those whose mechanic's lien rights were created by direct written contract, we hold that Section 3264 is inapplicable here.

4. FSLIC cites several cases for the proposition that because FSLIC was dismissed from the only action that was commenced within the limitations period, Gayle lost forever its lien rights as against FSLIC. All of these cases stand for the proposition that a successful foreclosure action against one party, but not a second party,

We acknowledge that neither the relevant code sections nor the applicable cases explicitly dictate a result in the situation we confront. Cal.Civ.Code § 3144 stipulates:

> (a) No lien provided for in this chapter binds any property for a longer period of time than 90 days after the recording of the claim of lien, unless within that time an action to foreclose the lien is commenced in a proper court....
>
> (b) If the claimant fails to commence an action to foreclose the lien within the time limitation provided in this section, the lien automatically shall be null and void and of no further force and effect.

Cal.Civ.Code § 3144 (West Supp.1990). Gayle, as we know, did commence an action to foreclose in a proper court within the limitations period in which it named FSLIC as a party. Yet, prior to final judgment, it dismissed FSLIC from the action on the mistaken assumption that it was limited to an administrative remedy. The mistake was both mutual and reasonable.

We have found no cases that clearly support either Gayle or FSLIC.[4] We also do

does not bind the second party. *See Monterey S.P. Partnership v. W.L. Bangham, Inc.*, 49 Cal.3d 454, 261 Cal.Rptr. 587, 777 P.2d 623 (1989); *Riley v. Peters*, 194 Cal.App.2d 296, 15 Cal.Rptr. 41 (1961); *Grinnell Fire Protection Sys. Co. v. American Sav. & Loan Ass'n*, 183 Cal. App.3d 352, 228 Cal.Rptr. 292 (Ct.App.1986). These cases are inapplicable.

First, in the instant case, the district court did not hold that FSLIC was bound by the first state action. Rather, it made an independent determination as to the priority and perfection of Gayle's lien rights as against FSLIC. Furthermore, the facts of the cases cited by FSLIC are clearly distinguishable from those characterizing the instant case. In the cited cases, the parties in question had *never* been joined in the foreclosure suits. By contrast, in the instant case, FSLIC was initially a named party. Gayle did not diverge from the requirement, set forth by the California Supreme Court in *W.L. Bangham*, that: "[A]ll persons with an interest in the subject real property at the time suit is brought to enforce a mechanic's lien on that property *must be made parties to the suit.*" 49 Cal.3d at 459, 261 Cal.Rptr. at 590, 777 P.2d at 626 (emphasis added). *See also Grinnell Fire Protection*, 183 Cal.App.3d at 354, 228 Cal.Rptr. at 293 (lienholder must *name* all interested parties to the foreclosure action within the 90–day period or claims of priority against those not named are barred). Gayle did, in fact, name FSLIC to the

not find Cal.Civ.Code § 3148 (West 1974) dispositive of whether Gayle, by dismissing FSLIC without prejudice on the basis of a mistake shared by both, preserved its right to foreclose against FSLIC. Section 3148 reads that "[i]n all cases the dismissal of an action to foreclose the lien (unless it is expressly stated that the same is without prejudice) ... shall be equivalent to the cancellation and removal from the record of such lien." True, section 3148 arouses hope, only to frustrate it, because it refers to the dismissal of the *action*, not of a *party* to an action that continues to final judgment. Nonetheless, California's tradition of liberal construction in favor of the lienholder permits us to do justice by holding that section 3144 does not bar Gayle's recovery.

■■■■ The law has long recognized that it is unjust to permit either party to a transaction, in which both are laboring under the same mistake, to take advantage of the other when the truth is known. *See Hannah v. Steinman*, 159 Cal. 142, 146–47, 112 P. 1094, 1096 (1911) (en banc); *Benson v. Bunting*, 127 Cal. 532, 537, 59 P. 991, 992 (1900); *Guthrie v. Times–Mirror, Co.*, 51 Cal.App.3d 879, 884, 124 Cal.Rptr. 577, 580 (Ct.App.1975).[5] *See also* Restatement (Second) of Contracts § 152 (1979); 3 Corbin on Contracts § 616 (1960); 13 Williston on Contracts § 1549 at 135 (3d ed. 1970). To the extent feasible, the law seeks to return the parties to their original positions. The spirit of this tradition further guides our decision in this case.[6]

### 3. Purposes Underlying the Statute of Limitations

That the district court's decision is not inconsistent with a primary purpose of statutes of limitations, i.e., the prevention of surprise, buttresses our holding.

> Statutes of limitation ... are designed to promote justice by preventing surprises through the revival of claims that have been allowed to slumber until evidence has been lost, memories have faded, and witnesses have disappeared. The theory is that even if one has a just claim it is unjust not to put the adversary on notice to defend within the period of limitation....

*Order of R.R. Telegraphers v. Railway Express Agency, Inc.*, 321 U.S. 342, 348–49, 64 S.Ct. 582, 586, 88 L.Ed. 788 (1944). FSLIC cannot reasonably contend that it was surprised by Gayle's assertion of its lien rights once a path was cleared for the instant action by our decision in *Morrison–Knudsen, Co.* Within the original limitations period, Gayle served FSLIC with notice that it intended to pursue its mechan-

initial action. In light of the underlying purposes for the statute of limitations (see Section III.A.3. of this opinion), we find dispositive the distinction between *never* naming parties to the suit and naming but then dismissing them under the unusual circumstances that characterize the instant case.

5. In 1872, the California legislature enacted Civ. Code §§ 1567, 1578, 1689 (West 1982). These statutes allow for rescission of a contract where consent to the contract was obtained through mutual mistake of law. Section 1578 defines a mutual mistake of law as one arising from:

> A misapprehension of the law by all parties, all supposing that they knew and understood it, and all making substantially the same mistake as to the law.

Cal.Civ.Code § 1578(1) (West 1982).

6. Although we use this doctrine primarily as analogy, we believe that it can fairly be used to rescind the March 4, 1986 stipulated dismissal entered into by Gayle and FSLIC. That agreement dismissed FSLIC without prejudice from the first state action so that Gayle could pursue FSLIC's administrative claims process. Both parties consented to this agreement, laboring under the mistaken belief that Gayle had no viable course of action other than pursuit of FSLIC's administrative process because *Hudspeth* was likely to be adopted by this circuit. "It cannot be doubted that plaintiff would not have consented to the [agreement] but for this mistake." *Hannah v. Steinman*, 159 Cal. at 147, 112 P. at 1096. The remedy in California for consent given based on a mutual mistake of law is rescission. *Guthrie v. Times–Mirror, Co.* 51 Cal.3d at 884, 124 Cal.Rptr. at 580. Rescission of the stipulated dismissal would place the parties in the positions they occupied at the time they entered into that agreement: FSLIC would be a defendant in a foreclosure action instituted by Gayle squarely within the limitations period set forth in Cal.Civ.Code § 3144 (West Supp. 1990). Thus, it is fair and just that we use our equitable powers to permit the parties to resume their dispute where they left it at that point in time and allow resolution on the merits of the claims now on appeal.

ic's lien claim. Furthermore, the circumstances of the dismissal left no doubt that Gayle intended to continue pursuing its claim through whatever legal avenues that were then, or might become, available.

Nor does our holding do violence to the function of statutes of limitations "as statutes of repose." "They proceed upon the theory that the delay, for a fixed period, to assert one's claim, raises a presumption of settlement, and that a party ought not to be afterwards harassed respecting it." *Kane v. Cook*, 8 Cal. 449, 458 (1857). In the instant case, no reasonable observer would conclude that Gayle's failure to retain FSLIC as a party in the first state action reflected a willingness on Gayle's part to withdraw its claim against the property. The withdrawal was to facilitate pursuit of the claim through the only channel *Hudspeth* said was available. Any sense of repose that FSLIC might have obtained from the dismissal resulted solely from a sense that the terrain on which the contest would take place had improved, not from any sense that the contest would not take place.

4. Conclusion

▮ We affirm the district court's holding that Gayle's lien against the Anderson property was prior to FSLIC's interests in the property and had been properly perfected, and agree that Gayle's underlying lien rights should be vindicated. California recognizes that the substantive lien rights survive expiration of the statute of limitations and remain subject to equitable remedy. Such a remedy is proper in this case, because both Gayle and FSLIC assumed that only an administrative remedy was available. When that proved to be untrue, it is right to put the parties back to the position they held before *acting upon a mutually* held erroneous assumption.

▮ In addition, we hold that the district court was correct in permitting FSLIC to foreclose on the property while ordering it to post a release bond pursuant to Cal. Civ.Code § 3143 (West 1974) from which Gayle may be compensated for its interest in the property. *See Hutnick v. United*

*States Fidelity & Guar. Co.*, 47 Cal.3d 456, 462–63, 253 Cal.Rptr. 236, 239, 763 P.2d 1326, 1330 (1988). This action facilitated the disposition of the dispute by adequately providing protection to both parties.

B. *The Proper Measure of Value of Debt*

▮ We next consider whether the district court properly calculated Gayle's recovery. According to California statute, liens "shall be for the reasonable value of the labor, services, equipment, or materials furnished or for the price agreed upon by the claimant and the person with whom he contracted, whichever is less." Cal.Civ. Code § 3123 (West 1974). The district court determined that the amount Gayle is entitled to recover on its mechanic's lien is the unpaid amount remaining on its contract price for the work it performed for the Andersons ($205,280) plus interest at the rate of seven per cent per annum from March 15, 1985 (the date the lien was recorded) to December 8, 1988 (totalling $53,-886.03 in interest). Thus, as of December 8, 1988, the sum that the district court calculated that Gayle was entitled to recover was $259,166.03. The district court properly ordered that post-judgment interest accrue at the rate of ten per cent per annum from December 8.

Gayle asserts that it is entitled to recover the present day value of the property. There is no support in California law for Gayle's proposed valuation. Therefore, we affirm the district court's method of calculating that which Gayle is entitled to recover from FSLIC.

C. *Attorneys' Fees*

Finally, Gayle urges us to reverse the district court's denial of attorneys' fees below, and, in addition, seeks attorneys' fees for this appeal. In the absence of a statutory basis for an award of attorneys' fees, Gayle can receive such an award only under the rule articulated in *Alyeska Pipeline Serv. Co. v. Wilderness Society*, 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975). That is, "a court may assess attorneys' fees … when the losing party has 'acted in bad faith, vexatiously, wantonly,

or for oppressive reasons.' " *Id.* at 258–59, 95 S.Ct. at 1622–23 (citations omitted). *See also Hall v. Cole,* 412 U.S. 1, 5, 93 S.Ct. 1943, 1946, 36 L.Ed.2d 702 (1973). Gayle asserts that FSLIC acted in bad faith when it "twice bullied GAYLE into dismissing state court actions," insisted that FSLIC's administrative procedures constituted the sole remedy available to Gayle, but never adjudicated Gayle's claim through those procedures.

▆▆▆▆▆ Gayle seeks to transform a reasonable mutual mistake into duress or fraud. This claim clearly misses the mark. There is, of course, no question that Gayle would not have dismissed FSLIC from the state court actions if FSLIC had not "threatened" to have the case removed to federal court and to move for dismissal under the authority of *Hudspeth.* Nevertheless, FSLIC "threatened" Gayle with nothing more than what a reasonable reading of current law suggested it might be able to do. Indicating an intention to take certain available legal steps to defend oneself against a suit does not constitute bad faith, even if the legal rules under which one is operating subsequently are shown to have been wrong or even blatantly unfair to one's opponent. Although this court rejected *Hudspeth,* we shall not penalize FSLIC for acting in a manner that it viewed as consistent with *Hudspeth*'s authority prior to our rejection of it.

▆▆▆ In addition, we cannot find bad faith in FSLIC's failure to process Gayle's administrative claim in a timely manner. Gayle has presented no evidence to show that the failure to process the claim resulted from bad faith rather than any of the numerous factors that can cause administrative delays. Therefore, the district court's finding that Gayle failed to demonstrate bad faith on FSLIC's part was not clearly erroneous.

▆▆▆ Gayle also seeks attorneys' fees for the instant appeal, claiming that the appeal was frivolous. Fed.R.App.P. 38. An appeal is considered frivolous in this circuit "when the result is obvious," or the appellant's arguments wholly lack merit. *McCarthy v. Mayo,* 827 F.2d 1310, 1318

(9th Cir.1987); *Taylor v. Sentry Life Ins. Co.,* 729 F.2d 652, 656 (9th Cir.1984). That is not the case here. The result of this case was not obvious. It is a case in which the outlines of justice were clear but the pathway by which it could be reached was within the shadows. Therefore, we decline to award attorneys' fees to Gayle for this appeal.

## IV.

## CONCLUSION

In this case a lien claimant diligently followed the provisions of state law until a powerful federal agency made it clear that a different and federal process must be adhered to. The claimant should not be left without a remedy simply because the federal process later lost its efficacy. Although the claimant's constitutionally created lien may have become somewhat vaporous (since it was generally unenforceable and constituted no cloud upon title to the property), it did not vanish entirely. It retained sufficient vitality to allow a court of equity to prevent the injustice that would occur should the claimant be denied its priority rights against the federal agency—FSLIC.

For the reasons stated above, we affirm the district court's rulings and remand for enforcement of Gayle's mechanic's lien rights against the release bond that was substituted for the liened property. We leave to the discretion of the district court a determination of applicable post-judgment interest.

AFFIRMED and REMANDED.